THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v AN-
THONY CARPENITO, Respondent.

Second Department, September 23, 1991

### APPEARANCES OF COUNSEL

*Carl A. Vergari, District Attorney (Diane E. Selker* and *Richard E. Weill* of counsel), for appellant.

*Gilleece & Altman (Kevin P. Gilleece* of counsel), for respondent.

### OPINION OF THE COURT

RITTER, J.

The County Court ordered a *Darden* hearing *(People v Darden,* 34 NY2d 177) before deciding a motion to suppress evidence seized pursuant to a search warrant that was issued on the basis of information supplied "in large part" by a confidential informant. The court's action was taken "to guard against fabrication of informants [and] to insure [the informant] exists". The informant's testimony was to be taken at a closed hearing, not to be attended by either the defendant or his counsel, in order to prevent disclosure of the informant's identity. Despite this, the informant refused to come to the courthouse and testify, reportedly because of fear of losing his life. The People produced a detective who offered to give in camera testimony disclosing the identity of the informant and repeating conversations had with him concerning the investigation that led to the application for a search warrant. The County Court rejected that offer and suppressed drugs, weapons, drug paraphernalia, and records of drug sales seized during the execution of the search warrant. The People appeal.

We hold that where evidence establishes that the informant is unavailable, because of fear, to give testimony in person, other evidence may be offered to establish his existence and negate the defense claim that information essential to a finding of probable cause, and attributed to the alleged informant, was fabricated by the police. Here, the County Court erred by granting suppression of evidence seized pursuant to a search warrant without considering the validity of the People's claimed inability to produce the informant and giving the People a reasonable opportunity to prove his existence with other evidence. Accordingly, we reverse and remit the matter to the County Court for further proceedings.

On July 27, 1988, Detective Lawrence Burns of the Town of Mt. Pleasant Police Department executed a search warrant at the defendant's residence resulting in the seizure of drugs, drug paraphernalia, records of drug sales, and weapons. The

search warrant had been issued the preceding day by a local Magistrate. The application for the warrant consisted of an affidavit by Detective Burns reporting that the police had been conducting an investigation of suspected cocaine trafficking in the Town of Mt. Pleasant. While the investigation was said to have been commenced because of information received from a previously used and proven reliable confidential informant, no details of information attributed to that informant were included in the affidavit. However, information received from a second informant provided cause to believe that the defendant, together with an individual identified as Thomas Nardi, and others, were involved in a narcotics distribution enterprise.

The second informant, who had been "used on at least two previous occasions" to bring about arrests in narcotics investigations, was reported to have personally observed the defendant arrive at Nardi's home on at least two separate occasions carrying bricks of cocaine in a paper bag. On one such occasion, the informant reportedly saw the defendant go into an upstairs bedroom at Nardi's house and place the cocaine in a cooler located in the closet. Even though those observations were made over five months prior to the application, the information was brought up to date when the second informant was said to have observed Nardi arrive home from the defendant's residence with similar amounts of cocaine every two to three weeks. Burns indicated in his affidavit that continued surveillance of the defendant's residence, coupled with evidence gathered pursuant to a pen register order on the defendant's telephone, corroborated reports from confidential informants that large quantities of cocaine were kept, sold, and disbursed from the defendant's residence. Since the latter claims were conclusory, the information attributed to the second informant was essential to finding probable cause.

The defendant moved to suppress the seized evidence contending that the search warrant was invalid for a number of reasons, including a claim that the statements of the second informant were false and perjurious and that the defendant denied ever taking cocaine into the Nardi house. Defense counsel requested that the informant be produced for a *Darden* hearing to determine if he existed and whether he imparted the information as alleged by Detective Burns.

The County Court granted the defendant's motion only to the extent of ordering a *Darden* hearing as soon as practicable. The court stated in part:

"The information supporting the warrant came in large part from information supplied by a confidential informant. The Court, to guard against fabrication of informants, will conduct an in-camera hearing, with regard to the second confidential informant, to insure he exists and with regard to the information imparted by such informant *(see, People v Little,* 48 AD2d 720).

*"Assuming the informant exists, the warrant is supported by probable cause"* (emphasis added).

The record indicates that the County Court made numerous attempts to hold the *Darden* hearing but that the People were unable to produce the informant. At a proceeding conducted on October 5, 1989, an Assistant District Attorney informed the court that both he and members of the Mt. Vernon police department had made numerous unsuccessful attempts to convince the informant to come before the court for the hearing. The prosecutor indicated that the informant told the police he had been threatened with bodily harm and was scared to come to the courthouse and testify. The prosecutor offered the in camera testimony of a Mt. Vernon detective who was present and prepared to disclose the informant's identity and repeat the conversations with the informant that were summarized in the warrant application.

The court rejected the People's offer and by order entered November 3, 1989, granted that branch of the defendant's omnibus motion which was to suppress the physical evidence seized pursuant to the warrant because of the People's failure to produce the confidential informant. The court concluded, without taking any proof, that the People's failure to produce the informant "casts serious doubts" as to his existence. In our view, the record does not support a finding that the evidence attributed to the informant was fabricated by the police, or the conclusion that suppression was mandated under the circumstances of this case.

The identity of police informants has long been accorded a privilege of confidentiality. The public policy considerations underlying the privilege are compelling. Anonymity is crucial in maintaining the free flow of information from informants to law enforcement officers, and in protecting them from physical reprisals *(see, e.g.,* 1 LaFave, Search and Seizure § 3.3 [g], at 698 [2d ed]; *People v Pena,* 37 NY2d 642, 644). For these reasons, the courts have zealously enforced the informant's privilege with few exceptions.

However, when disclosure is sought during trial and it bears upon a fair adjudication of the issue of innocence or guilt, important constitutional and policy considerations are raised related to the right of confrontation, due process and fairness *(People v Goggins,* 34 NY2d 163, 168, *cert denied* 419 US 1012). In such cases, disclosure of an informant's identity or the contents of his communications is "essential [and] * * * the privilege must give way" *(Roviaro v United States,* 353 US 53, 61), to avoid the risk of convicting the innocent *(People v Goggins, supra,* at 169).

In *Goggins,* decided the same day as *Darden (supra),* the Court of Appeals pointed out that a different analysis applies to a pretrial determination of probable cause where the only pertinent inquiry regarding an informer's identity is whether he in fact exists and whether he made the communications attributed to him. At this stage of the proceeding, "there is no inflexible Federal constitutional standard of disclosure applicable in every case involving an informant" *(People v Goggins, supra,* at 168, citing *McCray v Illinois,* 386 US 300, 312-314).

Conscious of the need to take every reasonable precaution "to assure that the anonymity of the informer is protected to the maximum degree possible" during a suppression hearing *(People v Darden, supra,* at 181), the Court of Appeals issued guidelines in *Darden* for determining probable cause when a search was based solely on information supplied by an informant. Striking a balance between the defendant's rights and the competing informer's privilege, the *Darden* court ordered an ex parte, in camera hearing that would preserve the anonymity of the informer while providing an opportunity for the hearing court to make findings of fact on the contested issues. Since the hearing had to take place in the absence of the defendant and his counsel, the guidelines sought to better equip the hearing court to conduct a meaningful examination of the informant. This was to be accomplished by permitting the defendant and his counsel to submit proposed questions to the court. Through it all, the *Darden* guidelines contemplated the availability of the informer for interrogation by the suppression court.

The *Darden* decision was born of a concern that an overzealous police officer might create a fictitious informant to justify an illegal search and seizure. While the cases deciding requests for a *Darden* hearing do not draw a distinction between warrantless searches and those conducted pursuant to a search warrant, there is reason for such a distinction.

The Court of Appeals has clearly signaled its preference for seizure pursuant to a search warrant rather than a warrantless search incident to an arrest *(People v Hanlon,* 36 NY2d 549, 558-560). When the warrant application is sworn to before a Magistrate, it occurs prior to the search and the resulting seizure. Therefore, the information attributed to an informant in the warrant application cannot be tailored to conform with facts learned as the result of the search.

A *Darden* hearing is unnecessary when the confidential informant is produced before the Magistrate who issues the search warrant *(People v Salgado,* 57 NY2d 662). The informant's appearance establishes that he exists and gives the Magistrate the opportunity to test his reliability.

While it might be argued that there is no need for a *Darden* hearing even when the informant has not appeared before the Magistrate, provided the search warrant application is sufficient on its face, we do not find it improper to order such an in camera hearing here. However, in deciding whether the informant exists and did the informing attributed to him, it is appropriate to take into account the fact that the police applied for a search warrant.

The cases predating issuance of the *Darden* guidelines are instructive in understanding the decision. The circumstances that would mandate disclosure of an informant's identity were discussed by a unanimous Court of Appeals in *People v Malinsky* (15 NY2d 86). The court held the appeal in abeyance while remitting the case to the Supreme Court for a further hearing on the defendant's motion to suppress incriminating evidence seized during a search incident to an arrest. The arresting officer's probable cause for the arrest was information attributed to a confidential informant and nothing else. The defendant claimed that the informant was nonexistent and that an illegal wiretap had been the source of the police officer's information. Despite this, the hearing court refused to order the District Attorney to disclose any facts as to the informant's identity, his background or the source of his knowledge. In remitting the case to the hearing court, the Court of Appeals was careful to accord the prosecution the opportunity to show that there was evidence independent of the arresting officer's testimony that would establish probable cause. Failing that, disclosure of the informant's identity would be required.

Several years after *Malinsky (supra)* was decided, the United States Supreme Court issued its opinion in *McCray v*

*Illinois* (386 US 300, *supra)* which drew the distinction between requiring disclosure of an informant's identity in a pretrial proceeding to determine whether probable cause existed and requiring disclosure during trial when it had a significant bearing on the issue of guilt or innocence. The court held that disclosure was essential during trial but discretionary during the pretrial proceeding to determine probable cause. *People v Castro* (29 NY2d 324) followed in the wake of *McCray* and sparked a sharp division in the Court of Appeals as to whether disclosure of the informant's identity was necessary where the only evidence used to establish his existence, and reliability, was the arresting officer's own testimony regarding his communications with the informant and personal observations by the same officer, made at the scene, which corroborated the information imparted by the informant. A majority of the court held this to be sufficient while the dissenting Judges argued that such testimony provided "no independent substantiation of the fact of the informer's existence or of his act of informing" *(People v Castro,* 29 NY2d 324, 328, Fuld, Ch. J., dissenting). The dissenters' concern was that if the police officer testified falsely about a fictitious informant, it was a short step to falsify observations corroborating the communications falsely attributed to the nonexistent informer. This sharp division, coupled with increasing concern with the problem of perjured police testimony discussed in *People v Berrios* (28 NY2d 361), set the stage for *Goggins* and *Darden (supra).*

The cases coming after *Darden (supra)* emphasize that the determination to hold an in camera inquiry as to the existence of an informer and with respect to communications made by the informer to the police, was committed to the sound discretion of the hearing court *(People v Huggins,* 36 NY2d 827). It follows that the *Darden* guidelines did not establish a procedure chiseled in stone; rather, it outlined a procedure designed to resolve most cases. Its goal is not impaired by the result we arrive at today.

The constitutional and policy considerations underlying the *Darden* guidelines do not impose an inflexible rule that prohibits resort to other types of evidence to establish the contested facts when the informant is unavailable. Several cases demonstrate the point. Both *People v Fulton* (86 AD2d 675, *affd* 58 NY2d 914), and *People v West* (56 AD2d 955, *revd on other grounds* 44 NY2d 656) involved confidential informants who could not be produced at the time a *Darden* hearing was

ordered. In *Fulton,* an 80-year-old woman's personal observations established probable cause for the defendant's arrest. When the case was remitted on appeal for a *Darden* hearing, it was nearly 10 years later and the police were unable to locate the woman despite diligent efforts. The court concluded that the prosecution's inability to produce the informant at the hearing did not mandate suppression. The court found that the record, which included police testimony reporting the communications from the informant, was sufficient to establish that the informant existed and that the People made diligent efforts to find her. It affirmed the finding of probable cause based upon the observations attributed to the missing woman.

The court in *People v West (supra),* reached the same result. The opinion does not include any explanation for the prosecution's inability to locate and produce the informant except that disclosure of his identity would endanger him. The Appellate Division concluded that testimony given by several witnesses during an in camera proceeding before the trial court "emphatically established that the informant was not imaginary but real and that the information communicated to the police was not a fabrication" *(People v West, supra,* at 956). The court also found that the proceedings held were sufficient to protect the defendant's rights. While the Court of Appeals subsequently reversed the judgment of conviction, it did so because the information provided by the informant, even though it was believed, did not make out probable cause for the warrantless search conducted by the police. Nothing in the court's decision indicated any disagreement with the Appellate Division finding on the *Darden* issue.

Another case is relevant. *People v Burks* (134 AD2d 604), holds that suppression of evidence is not the proper remedy when a prosecutor refuses to disclose the identity of an informant after claiming to be unable to locate the informant for production at a *Darden* hearing.

The duty to produce a confidential informant for the purpose of giving testimony at trial is spelled out in *People v Jenkins* (41 NY2d 307). When the informant is no longer under the control of the government or is unavailable to testify through no fault of the government, no penalty is imposed on the government for failing to produce the informant unless the defendant demonstrates that the informant has exculpatory evidence to give. It follows that no penalty should attend the failure of the prosecution to produce an

informant for a *Darden* hearing if the informant is genuinely unavailable, provided, of course, that it was not bad-faith conduct by the government that made the informant unavailable.

*People v Fulton* (86 AD2d 675, *affd* 58 NY2d 914, *supra)* and *People v West* (56 AD2d 955, *revd on other grounds* 44 NY2d 656, *supra)* make it clear that suppression should not necessarily be granted even though the prosecution is unable to produce a confidential informant at a *Darden* hearing. Rather, there should be an inquiry with respect to whether an informant is genuinely unavailable. If so, other evidence may be offered to meet the *Darden* burden.

Because the informant in *Fulton (supra)* could not be located, the Court of Appeals sanctioned resort to other evidence to meet the *Darden* standard of proving the missing informant was not fictitious. Proof that the informant was unavailable, as well as proof of her existence, came from police testimony. Nonetheless, the Court of Appeals was content to permit traditional methods of evaluating police testimony to be employed in finding whether the prosecution has established both that the informant was unavailable and that she existed *(compare, People v Berrios,* 28 NY2d 361, *supra).* There is no reason to apply this analysis exclusively to informants who are missing. Certainly the same result would be called for if the confidential informant was unavailable because of death, illness or incapacity *(compare,* CPL 670.10 [1]).

In each instance, proof of unavailability must come from witnesses other than the confidential informant. This exception to the *Darden* guidelines recognizes that it is impossible at times to produce the informant. A witness who is so fearful that he will not testify is just as unavailable as a witness who is dead or cannot be found *(see, e.g., Matter of Holtzman v Hellenbrand,* 92 AD2d 405). When an informant refuses to testify because of fear, such a circumstance should trigger the prosecution's right to rely on other evidence to satisfy the *Darden* burden without first producing the informant and compelling him to come to the courthouse in order to refuse to testify. *State v Richardson* (204 Conn 654, 529 A2d 1236) makes a powerful statement of the risks that may attend compelling an informant to appear at an in camera hearing held in the courthouse and we approve of the court's analysis. No State policy is served by requiring a frightened informant to travel to the courthouse to report that he is afraid to testify when that fact may be established by other evidence.

Although decided prior to *Darden* (34 NY2d 177, *supra),* *People v Coffey* (12 NY2d 443, *mot to amend remittitur granted* 13 NY2d 726, *cert denied* 376 US 916) provides an example of how the existence of an informer can be verified without disclosing his identity or requiring his personal appearance for an in camera inquiry. In *Coffey,* an Assistant District Attorney was sworn as a witness at the pretrial suppression hearing, and testified that he had personally contacted the informer and tried without success to persuade him to testify for the prosecution. The Assistant District Attorney also testified that the informer confirmed the statements allegedly provided to the arresting officer. The Court of Appeals affirmed the lower court's determination that the prosecuting attorney's testimony, combined with the arresting officer's, was sufficient to corroborate the police officer's testimony and to establish the fact of the informer's "existence and of his informing" *(People v Coffey, supra,* at 452; *see also, McCray v Illinois,* 386 US 300, *supra).*

Lastly, we hold that before the hearing court considers alternative evidence offered to comply with the *Darden* burden, we believe it is appropriate to first require that the People cross the threshold of proving that the informer is genuinely unavailable. Although statute and case law generally list death, illness, incapacity, absence from the jurisdiction, and invocation of the privilege against self-incrimination as the criteria for establishing unavailability *(see,* CPL 670.10 [1]; *see, e.g., People v Shortridge,* 65 NY2d 309, 313), other factors such as fear of physical reprisal may establish "practical unavailability" and satisfy the People's burden *(see,* Richardson, Evidence § 258, 1972-1985 Cum Supp, at 113-114 [Prince 10th ed]; *People v Nucci,* 162 AD2d 725). Mindful of the concerns that gave rise to the *Darden* decision, and vigilant to prevent a claim that the informant is unavailable being employed as a cloak to conceal the use of a fictitious informant, we leave to a case-by-case determination the question of what evidence is sufficient to establish that an informant is genuinely unavailable. Accordingly, the order appealed from is reversed, on the law, and the matter is remitted to the County Court, Westchester County, for further proceedings consistent with this opinion.

THOMPSON, J. P., EIBER and MILLER, JJ., concur.

Ordered that the order is reversed, on the law, and the matter is remitted to the County Court, Westchester County, for further proceedings consistent herewith.