**Sammy GERACI, Petitioner–Appellant,**

v.

**Daniel SENKOWSKI, Supt. Respondent–Appellee.**

**Docket No. 98–2937**

United States Court of Appeals, Second Circuit.

Argued:  Nov. 29, 1999

Decided:  April 28, 2000

Joel A. Brenner, East Northport, NY, for Petitioner–Appellant.

Roseann B. MacKechnie, Assistant District Attorney, (Charles J. Hynes, District Attorney Kings County, Victor Barall, Assistant District Attorney, Brooklyn, New York, of counsel), for Respondent–Appellee.

Before: VAN GRAAFEILAND, NEWMAN and POOLER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Sammy Geraci appeals from an order of the United States District Court for the Eastern District of New York (Gleeson, *J.*) dismissing Geraci's petition for a writ of habeas corpus, under 28 U.S.C. § 2254, as both untimely and without merit. *See Geraci v. Senkowski,* 23 F.Supp.2d 246 (E.D.N.Y.1998). On November 12, 1998, the district court issued a certificate of appealability.

On April 20, 1990, there was a fight in a Brooklyn nightclub. Geraci was convicted in New York State Supreme Court of first degree manslaughter and first degree assault for fatally stabbing Anthony Granese during the fight.

Peter Terranova, an eyewitness, testified before a Kings County grand jury that he saw Geraci stab Granese. Terranova had expressed concern about testifying before the grand jury, but prosecutors explained grand jury secrecy to him and arranged for him to testify at an "off time." A few days before trial Terranova

told prosecutors that, if called as a witness, he would testify that he did not see who stabbed Granese. Prosecutors therefore asked the state trial court to admit Terranova's grand jury testimony as part of their case-in-chief. The trial court held a hearing, known as a *Sirois* hearing, to determine whether misconduct on the part of the defendant had caused Terranova to change his story.

At the hearing, there was evidence that Terranova had contacted the police shortly after the stabbing and given a sworn audiotaped statement describing how he was fifteen feet away when he saw Geraci stab Granese in the chest. Geraci then ran from the club but collided with Rocky Giamportone, the club's owner, whom he stabbed in the leg. Geraci fled in a car with his brother, Frank Geraci. Paul Geraci, another brother, fired a gun to disperse a crowd that was chasing after Sammy.

In November 1991, it was discovered that the grand jury minutes were missing. On January 13, 1992, just prior to trial, Terranova quit his well-paying job without notice and fled from his home. When he subsequently was located in Florida, he stated that he had been approached by a person who showed him his grand jury minutes and that both he and his family were threatened. In addition, he had been offered and received substantial sums of money for staying away from New York until after the trial. Terranova indicated to prosecutors that he would change the story he had given under oath if called to testify. On March 5, 1992, Terranova appeared in New York pursuant to a material witness order.

At the *Sirois* hearing before the trial court, Terranova testified that he had not seen the stabbing. He explained the discrepancy between his hearing testimony and his testimony before the grand jury on the ground that when he first testified he was unsure of the facts because the club had been dark and he had been drinking.

The trial court determined that Terranova had been "markedly evasive" in his testimony at the hearing. The trial court also found that the prosecution had demonstrated by clear and convincing evidence that Terranova had been threatened by Geraci or someone acting on Geraci's behalf, and that if required to testify, he would do so falsely. As a result, the trial court found Terranova "practically unavailable" and permitted the use of his grand jury testimony in the prosecution's case.

Geraci was convicted and sentenced to a total of 13 ⅓ to 40 years imprisonment. The judgment was unanimously affirmed by both the Appellate Division, *People v. Geraci*, 200 A.D.2d 758, 607 N.Y.S.2d 116 (1994), and the New York Court of Appeals, 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817 (1995). The instant petition was filed on February 24, 1998, almost three years after the New York Court of Appeals' final judgment of affirmance. The initial question that presents itself is whether the instant petition was timely filed. The district court held that it was not.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, requires that petitions for habeas corpus relief from state court judgments of conviction be filed within one year of the judgment's becoming final as a result of direct review. 28 U.S.C. § 2244(d)(1)(A). This Court has held, however, that prisoners whose convictions became final prior to the effective date of the AEDPA, April 24, 1996, should be permitted one year after the effective date to file their first section 2254 petition. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998). Geraci filed his petition almost two years after the effective date of the AEDPA. However, periods during which state courts' reviews of convictions are "pending" are not counted toward the one-year limitation period. 28 U.S.C. § 2244(d)(2).

According to the district court's calculations, Geraci's one-year limitation period

began to run on April 25, 1996, one day after the AEDPA was enacted. 23 F.Supp.2d at 253. It stopped running 283 days later when Geraci filed a motion pursuant to section 440.20 of New York's Criminal Procedure Law to set aside his sentence. *Id.* at 251, 253. It began to run again on August 26, 1997, when Geraci was denied leave to appeal the Appellate Division's denial of his section 440.20 motion, and continued to run through November 11, 1997 when Geraci filed a petition for writ of error *coram nobis,* a total of 78 days. *Id.* at 253. Thus, a total of 361 days had expired prior to the time Geraci filed his *coram nobis* petition. The *coram nobis* petition was denied on February 17, 1998 and the time clock started to run again. It ran until February 24, 1998, the day the instant petition was filed, a total of seven days. When these seven days are added to the 361 day prior total, the one-year AEDPA total was exceeded by three days.

■ Geraci's counsel contends that, although the Appellate Division's order rejecting his *coram nobis* application was filed on February 17, 1998, he did not receive notice of it until February 23 and that the *coram nobis* application was "pending" until the latter date. He argues that this extended definition of the term "pending" was necessary in order that he might have time to decide how to proceed further in the appellate process. This Court recently decided that "a state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999), *cert. granted,* — U.S. —, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000). With the filing of the Appellate Division's *coram nobis* order, the door of the New York Court of Appeals was closed and further appellate review was unavailable. *See People v. Adams,* 82 N.Y.2d 773, 603 N.Y.S.2d 991, 624 N.E.2d 175 (1993). Geraci's counsel makes the same argument with regard to his section 440.20 motion, and it is without merit for the same reason. *See* N.Y.Crim. Proc. Law §§ 460.15, 460.20 (McKinney 1999). Moreover, we reject Geraci's argument that the statute of limitations stopped when he filed a federal habeas petition with unexhausted claims, which was dismissed without prejudice. In this case, the first federal petition had no effect whatsoever on the section 2244(d) tolling because the clock already was stopped for the pending section 440.20 motion in state court.

■ In addition, the record contains no evidence of extraordinary or unusual circumstances that would justify equitable tolling of the AEDPA's one-year limitation period. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). The district court rejected as implausible Geraci's claim that his counsel filed several days late as a result of "miscalculation." 23 F.Supp.2d at 254. There is no indication that Geraci's counsel was concerned about dates and limitations until it was too late to matter.

■ Assuming arguendo that Geraci's petition was timely, it was without merit. The trial court did not err in permitting Terranova's grand jury testimony to be read to the jury. It held that Terranova was "practically unavailable" as a witness because of the threats against him and his family made on behalf of Geraci. "A witness who is so fearful that he will not testify" or will testify falsely, "is just as unavailable as a witness who is dead or cannot be found." *People v. Carpenito,* 171 A.D.2d 45, 53, 574 N.Y.S.2d 218 (1991), *aff'd,* 80 N.Y.2d 65, 587 N.Y.S.2d 264, 599 N.E.2d 668 (1992). The New York Court of Appeals said that "[i]n such situations, the courts have held, the defendant may not assert either the constitutional right of confrontation or the evidentiary rules against the admission of hearsay in order to prevent the admission of the witness's out-of-court declarations." 85 N.Y.2d at 366, 625 N.Y.S.2d 469, 649 N.E.2d 817 (citations omitted). There is ample judicial authority to support this holding. *See,*

*e.g., People v. Cotto,* 92 N.Y.2d 68, 677 N.Y.S.2d 35, 699 N.E.2d 394 (1998), which followed closely upon the state court's opinion in the instant case; *see also United States v. Aguiar,* 975 F.2d 45 (2d Cir. 1992); *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982). The evidence which properly included Terranova's grand jury testimony was amply sufficient to justify the jury's verdict.

■ There was no error in the imposition of sentence, which was within the statutory limits and was not based on any inappropriate factor such as absence of remorse. Insistence upon innocence is not the same as absence of remorse.

The writ of habeas corpus was properly denied.