Antwan HARRISON, Petitioner,

v.

Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.

Manuel Clark, Petitioner,

v.

Wayne F. Barkley, Superintendent, Riverview Correctional Facility, Respondent.

Nos. 98–CV–3666 JG, 99–CV–3625 JG.

United States District Court, E.D. New York.

June 30, 2000.

Antwan Harrison, Green Haven Correctional Facility, Stormville, NY, Petitioner Pro Se.

Manuel Clark, Riverview Correctional Facility, Ogdensburg, Petitioner Pro Se.

Charles J. Hynes, Kings County District Attorney, Brooklyn, NY, by Michael Gore, Cynthia Kean, Assistant District Attorneys, for Respondents.

*MEMORANDUM AND ORDER*

GLEESON, District Judge.

Both of these petitions for writs of habeas corpus present the question whether an attempt to appeal an unappealable decision—the Appellate Division's denial of a motion for a writ of error coram nobis—tolls the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Answering the question in the negative, I dismiss both petitions as untimely.

## BACKGROUND

### A. *Statute of Limitations*

Under AEDPA, a habeas petitioner must file his application for relief within a one-year period of limitations that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). AEDPA also provides that this one-year period is tolled while "a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Prisoners whose convictions became final before the enactment of AEDPA (like petitioner Clark) had a one-year grace period—from AEDPA's enactment on April 24, 1996, until April 24, 1997—to file their petitions. *See Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998). That grace period is also subject to tolling by a "properly filed application for State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2). *Smith v. McGinnis,* 208 F.3d 13, 15 (2d Cir.2000) (per curiam), *petition for cert. filed,* (U.S. Apr. 17, 2000) (No. 99–9695).

### B. *Antwan Harrison*

Following a jury trial in Supreme Court, Kings County, petitioner Antwan Harrison was convicted of two counts of Murder in the Second Degree, and one count each of Kidnapping in the First Degree and Criminal Possession of a Weapon in the Second and Third Degrees.

His conviction was subsequently affirmed by the Appellate Division, Second Department. *See People v. Harrison,* 216 A.D.2d 582, 628 N.Y.S.2d 564 (1995). On June 25, 1996, the New York Court of Appeals denied Harrison leave to appeal his conviction. *People v. Harrison,* 88 N.Y.2d 936, 647 N.Y.S.2d 170, 670 N.E.2d 454 (1996). Harrison moved for reconsideration, and on July 5, 1996, the Court of Appeals denied the motion.[1]

Harrison's conviction thus became final on October 5, 1996, when the period within which he could have sought certiorari from the United States Supreme Court expired. *See Ross,* 150 F.3d at 98. However, at the time his conviction became final, Harrison's motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10, which had been filed on August 29, 1995, was still pending before the state courts. Specifically, although the motion had been denied by the trial court on August 27, 1996, Harrison had sought leave to appeal, which the Appellate Division denied on November 15, 1996.

Between November 15, 1996, and December 31, 1996, Harrison had no applications for review pending in the state courts, and the limitations period thus ran for 45 days. On December 31, 1996, Harrison filed his second motion for a writ of error coram nobis,[2] thus tolling the limita-

---

**1.** On concession of Artuz, I will assume that July 5, rather than June 25, is the date of the Court of Appeals's denial of leave for statute of limitations purposes. (Memorandum of Law in Support of Motion to Dismiss at 2 & n. 3.) The point is academic since, as described below, in Harrison's case the start of the statute of limitations period is defined not

by the end of direct review but rather by the resolution of his first collateral challenge.

**2.** Harrison had filed a previous motion for a writ of error coram nobis on September 27, 1995. The Appellate Division denied that motion on December 18, 1995, *see People v. Harrison,* 222 A.D.2d 608, 636 N.Y.S.2d 646

tions period. On May 27, 1997, the Appellate Division denied Harrison's second coram nobis application. *People v. Harrison*, 239 A.D.2d 601, 658 N.Y.S.2d 970 (2d Dep't 1997). Harrison sought leave to appeal, and on June 27, 1997, the Court of Appeals dismissed the application. *People v. Harrison*, 90 N.Y.2d 858, 661 N.Y.S.2d 185, 683 N.E.2d 1059 (1997). Finally, on May 7, 1998, Harrison mailed the instant petition for federal habeas relief. This mailing is deemed to constitute the filing of the petition. *See Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se*, he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk).

## C. *Manuel Clark*

Following a jury trial in Supreme Court, Kings County, petitioner Manuel Clark was convicted of two counts of Rape in the First Degree, two counts of Sodomy in the First Degree, two counts of Sexual Abuse in the First Degree, and one count of Unlawful Imprisonment in the Second Degree.

The Appellate Division, Second Department, affirmed Clark's conviction on March 17, 1986, *see People v. Clark*, 118 A.D.2d 718, 500 N.Y.S.2d 50 (2d Dep't 1986), and the Court of Appeals denied Clark's application for leave to appeal, *People v. Clark*, 67 N.Y.2d 1051, 504 N.Y.S.2d 1026, 495 N.E.2d 359 (1986). Clark then moved for reargument in the Appellate Division, which was denied on May 23, 1986. (Affidavit of Cynthia Kean, dated Aug. 25, 1999 ("Kean Aff. 8/25/99") ¶ 11.)

By motion dated January 26, 1996, and amended on April 9, 1996, Clark moved, *pro se*, to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10. The Supreme Court, Kings County, denied Clark's motion on March 25, 1997, and on May 30, 1997, the Appellate Division denied Clark leave to appeal. (Kean Aff. 8/25/99 ¶¶ 12–14; Petitioner's Affidavit in Support of Request for Appointment of Counsel and Traverse to Respondent's Answer in Opposition to Writ of Habeas Corpus, dated Oct. 29, 1999 ("Pet.'s Aff. 10/29/99"), Exh. C.)

Because Clark's collateral challenge was pending upon AEDPA's enactment, his one-year period did not begin running until May 30, 1997. It subsequently ran for approximately five months and three weeks, until November 21, 1997, when Clark moved in the Appellate Division for a writ of error coram nobis.[3] (Pet.'s Aff. 10/29/99 ¶ 13.) The Appellate Division denied the motion on March 23, 1998. *People v. Clark*, 669 N.Y.S.2d 934 (2d Dep't 1998). On September 1, 1998, the Court of Appeals dismissed Clark's application for leave to appeal on the ground that "the order sought to be appealed is not appealable under Criminal Procedure Law, Section 450.90(1)." (Pet.'s Aff. 10/29/99, Exh. C.) On January 26, 1999, the Court of Appeals dismissed Clark's application for reconsideration for the same reason. (*Id.*, Exh. E.)

Clark's petition for a writ of habeas corpus is dated June 19, 1999, which, in the absence of a contrary suggestion by Barkley, I will assume is the date he provided the petition to prison authorities for mailing. *See Houston*, 487 U.S. at 276, 108 S.Ct. 2379.

---

(2d Dep't 1995), and Harrison sought leave to appeal to the Court of Appeals. In an order dated April 15, 1996, the Court of Appeals dismissed Harrison's application "because the order sought to be appealed is not appealable under Criminal Procedure Law § 450.90(1)." (Affidavit of ADA Michael Gore, Aug. 5, 1998, Exh. 3.)

**3.** Barkley contends that Clark filed this motion on December 30, 1997. I need not resolve this question, however, because under either date Clark's federal petition is untimely.

## DISCUSSION

Based on the foregoing events, respondents argue that both petitions are time-barred under 28 U.S.C. § 2244(d)(1). In so arguing, respondents contend that petitioners' applications for leave to appeal the denial of their petitions for writs of error coram nobis were not "properly filed" under 28 U.S.C. § 2244(d)(2), because the Appellate Division's orders denying the writs were not appealable. Thus, according to Artuz, Harrison's limitations period ran for a total of 389 days—the 45 days between the denial of leave on the § 440.10 motion and the second motion for a writ of error coram nobis, and 344 days between the Appellate Division's denial of the second coram nobis motion and the filing of the habeas petition. Similarly, Barkley contends that Clark's limitations period ran more than 20 months—the five months and three weeks between the denial of leave to appeal with respect to the § 440.10 motion and the filing of the coram nobis motion, and just under 15 months between the Appellate Division's denial of the coram nobis motion and the filing of the habeas petition.

The petitioners contend that their applications for leave to appeal the denials of their motions for writs of error coram nobis were "properly filed" under 28 U.S.C. § 2244(d)(2), and thus that the limitations periods were tolled for an additional period—in Harrison's case, until June 27, 1997, rather than May 7, 1997, and in Clark's case, until January 26, 1999, rather than March 23, 1998. If Harrison is correct, his petition would be timely under § 2244(d)(1), as the limitations period would have run for the initial 45 days, been tolled until the Court of Appeals denied leave on June 27, 1997, and then would have run again for only 313 days before the filing of the petition. If Clark is correct, his petition would be timely, as the limitations period would have run for the initial five months and three weeks, been tolled until the Court of Appeals denied reconsideration on January 26, 1999, and

then would have run again for approximately four months and three weeks before the filing of his petition.

■ Although the AEDPA does not define what constitutes a "properly filed" motion for purposes of § 2244(d)(2), the Second Circuit has interpreted it to mean "an application for state post-conviction relief recognized as such under governing state procedures." *Bennett v. Artuz*, 199 F.3d 116, 123 (2d Cir.1999), *cert. granted*, —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000); *see also id.* at 121 (noting that most courts consider "a properly filed application [to be] one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing" (quoting *Villegas v. Johnson*, 184 F.3d 467, 469–70 (5th Cir.1999)) (internal quotation marks omitted)). Consequently, "a state-court petition is 'pending' from the time it is first filed until finally disposed of and *further appellate review is unavailable under the particular state's procedures.*" *Id.* at 120 (emphasis added). The "filing of creative, unrecognized motions for leave to appeal" does not toll the statute of limitations. *Adeline v. Stinson*, 206 F.3d 249, 253 (2d Cir.2000) (per curiam).

■ Under New York law, the Appellate Division's denial of a motion for a writ of error coram nobis is not appealable to the Court of Appeals. *See Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir.2000); *People v. Howard*, 89 N.Y.2d 857, 652 N.Y.S.2d 735, 675 N.E.2d 470 (1996); *People v. Marsicoveteri*, 79 N.Y.2d 913, 581 N.Y.S.2d 664, 590 N.E.2d 249 (1992); *People v. Tramell*, 77 N.Y.2d 893, 568 N.Y.S.2d 910, 571 N.E.2d 80 (1991). Accordingly, petitioners' purported motions for leave to appeal to the Court of Appeals were not "properly filed" under New York's "governing state procedures," *Bennett*, 199 F.3d at 123, and they therefore did not toll the statute of limitations. *See Abdullah v. Strack*, No. CV 98–0192, 1999 WL 389896, at *3 (E.D.N.Y. Apr.21, 1999) (holding that application for leave to ap-

peal denial of coram nobis petition was not "properly filed," because "an application for review is not 'properly filed' when it is filed in a court that has no jurisdiction over the claims"); *Forman v. Artuz,* No. 99 Civ. 9046, 2000 WL 378056, at *4 (S.D.N.Y. Apr.11, 2000); *cf. Geraci,* 211 F.3d at 9 ("With the filing of the Appellate Division's coram nobis order, the door of the New York Court of Appeals was closed and further appellate review was unavailable."). *But see Sowell v. Stinson,* 72 F.Supp.2d 66, 70 (E.D.N.Y.1998). Put another way, the coram nobis petitions were pending only until rejected by the Appellate Division, at which time "further appellate review [was] unavailable under [New York's] procedures," *Bennett,* 199 F.3d at 120, and the filing of "unrecognized motions for leave to appeal," *Adeline,* 206 F.3d at 253, did not extend the period of pendency.

I acknowledge some tension between this holding and the exhaustion requirement. The exhaustion requirement, in effect, tells prisoners that they must fully exhaust their claims at all available levels of the state system before seeking habeas review in federal court, on pain of dismissal of the federal petition for failure to exhaust. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (holding that in order to fully exhaust a claim a prisoner must seek even rarely-granted discretionary review by state's highest court). My decision here tells them that if they seek to exhaust a claim for which there is no possibility of review in the higher court, they may be punished for their effort by the dismissal

of their federal petition on statute of limitations grounds.[4]

Nevertheless, I am not persuaded, as was the court in *Sowell,* that the result is unfair. *See* 72 F.Supp.2d at 70 ("[T]o require a pro se petitioner to understand that he probably should attempt to appeal the denial of his coram nobis motion to ensure the exhaustion of state remedies, but that this appeal might not toll the statute of limitations for a federal habeas is asking too much"). It is true that the coram nobis remedy in New York law has proved to be versatile, and the doctrine may *generally* be described as "murky," *id.* at 69, but it has been clear for quite some time that the denial of such relief by an Appellate Division is not reviewable in the New York Court of Appeals. *See, e.g., Howard,* 89 N.Y.2d at 857, 652 N.Y.S.2d 735, 675 N.E.2d 470; *Marsicoveteri,* 79 N.Y.2d at 913, 581 N.Y.S.2d 664, 590 N.E.2d 249; *Tramell,* 77 N.Y.2d at 893, 568 N.Y.S.2d 910, 571 N.E.2d 80. I do not believe that it asks too much of state prisoners to know that, and to act accordingly in filing their federal petitions. *Cf. O'Sullivan,* 526 U.S. at 847–48, 119 S.Ct. 1728 ("[T]here is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.").

Because petitioners' applications for leave to appeal the denial of their coram nobis petitions were not "properly filed," they did not toll the running of the limitations period. Both petitions are therefore untimely.[5]

---

**4.** I also note some ambivalence in the Second Circuit on the question whether a narrow construction of the "properly filed" requirement in 28 U.S.C. § 2244(d)(2) serves any useful purpose. *Compare Bennett,* 199 F.3d at 123 ("[P]risoners serving jail time usually have little incentive to delay determinations of their habeas petitions"), *with Adeline,* 206 F.3d at 252–53 (cautioning that if AEDPA allowed for tolling whenever state prisoners filed "unrecognized motions for leave to appeal," "then so long as the state court were willing to keep its clerk's office door open to a

petitioner, he or she could ... stave off the running of the AEDPA-proscribed time to file a federal petition for habeas corpus virtually in perpetuity").

**5.** Harrison argues that even if his application to appeal the denial of his writ of error coram nobis was not "properly filed," the petition is still timely because the limitations period is tolled for 90 days from "the last state court decision for seeking certiorari." (Pet. Opp. 7/20/98, at 3; *see id.* at 7.) As part of this alternative argument, Harrison appears to

### CONCLUSION

For these reasons, the petitions are dismissed as untimely. I grant certificates of appealability to these petitions, limited to the question of whether a doomed attempt to appeal the Appellate Division's denial of a writ of error coram nobis tolls AEDPA's statute of limitations pursuant to 28 U.S.C. § 2244(d)(2). *See id.* § 2253(c)(2).

So Ordered.

contend that the last state-court decision from which he could have sought certiorari was the Appellate Division's May 27, 1997, decision denying his second motion for a writ of error coram nobis. This argument is meritless. The ninety-day period for seeking certiorari is relevant to determining only the point at which a judgment becomes final, as it frequently is the point at which the time for seeking direct review has expired. *See* 28 U.S.C. § 2244(d)(1)(A). Section 2244(d)(2), by contrast, does not contain § 2244(d)(1)(A)'s reference to the "expiration of the time for seeking ... review " Instead, § 2244(d)(2) tolls the limitations period only during the time in which a state-court motion for collateral review is "pending." Thus, even assuming Harrison could have petitioned for a writ of certiorari from the Appellate Division's denial of his coram nobis petition, he did not do so. His second coram nobis petition was thus not "pending" at any point subsequent to May 27, 1997. *See Geraci,* 211 F.3d at 9 (statute of limitations period begins running when Appellate Division denies coram nobis petition).

In addition, Harrison's argument that a statute of limitations dismissal would constitute an unconstitutional suspension of the writ of habeas corpus has been rejected by the Second Circuit. *See Rodriguez v. Artuz,* 161 F.3d 763 (2d Cir.1998) (per curiam), *aff'g* 990 F.Supp. 275, 277–84 (S.D.N.Y.1998).

Clark appears to argue that his statute of limitations period did not begin running until the end of collateral review. This argument has been rejected by the Second Circuit. *See Smith,* 208 F.3d at 17.

Clark also contends that his motion for a writ of error coram nobis remained pending until June 22, 1998, the date he actually received the Appellate Division's March 23, 1998, denial of his motion. Although I note that this additional period of tolling would not render Clark's federal petition timely, the Second Circuit has rejected this argument. *See Geraci,* 211 F.3d at 9 (holding coram nobis motion pending until Appellate Division's filing of order, not until petitioner received notice of it).

Although Clark appears to seek equitable tolling, he has not presented any "extraordinary circumstances [that] prevented him from filing his petition on time." *Id.* (citing *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996)). Moreover, even if Clark were entitled to equitable tolling of the period until the Court of Appeals dismissed his application for leave to appeal for lack of jurisdiction, he would clearly not be so entitled for the period during which his motion to reconsider was pending since he was on notice of the lack of jurisdiction before he filed that motion. (Although Harrison has not sought equitable tolling, he would not be entitled to it if he had. After his motion for leave to appeal the denial of his first coram nobis petition, he was on notice that the Court of Appeals was without jurisdiction over such applications.)

Lastly, Clark's renewed motion for appointment of counsel and motion for discovery are denied.