Qabail HIZBULLAHANKHAMON,
Petitioner,

v.

Hans WALKER, Superintendent of
Auburn Correctional Facility,
Respondent.

No. 99 Civ. 5016 (SAS).

United States District Court,
S.D. New York.

July 31, 2000.

Qabail Hizbullahankhamon, Auburn, NY, for petitioner pro se.

David A. Shimkin, Assistant District Attorney, Bronx County, Bronx, NY, for respondent.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Pro Se petitioner Qabail Hizbullahankhamon moves this Court, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus. Respondent has moved to dismiss, asserting that the petition is time-barred pursuant to 28 U.S.C. § 2244(d)(1), as clarified in *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998). For the reasons discussed below, the motion to dismiss is granted.

### I. Facts and Procedural History

The following facts are taken from the Respondent's Affirmation in Support of a Motion to Dismiss Petition for Habeas Corpus ("Resp.Aff.") and the Petitioner's Reply to Writ of Habeas Corpus ("Reply"). Unless otherwise indicated, the facts are undisputed.

On August 8, 1989, the New York Supreme Court, Bronx County, convicted petitioner, then known as Kirk Johnson, following a jury trial, of Murder in the Second Degree and Attempted Murder in the Second Degree. Petitioner was sentenced to consecutive indeterminate terms of imprisonment from twenty-five years to life on each murder count and eight and one-third to twenty-five years on each attempted murder count, totaling to ninety-one and two-thirds years to life. *See* Resp.Aff. ¶ 7.[1]

Petitioner appealed to the Appellate Division, First Department, raising three issues: (1) the People failed to prove him guilty of second degree attempted murder beyond a reasonable doubt; (2) the charge to the jury was fatally flawed in that it failed to require the jury to find petitioner guilty of the elements of the crimes

charged; and (3) the sentences of incarceration imposed, the aggregate of which amounted to ninety-one and two-thirds years to life, were illegal as a matter of law, unduly harsh and excessive, and should have been substantially reduced in the interests of justice. *Id.* ¶ 8. On November 12, 1991, petitioner filed a pro se supplemental brief claiming that (1) the prosecutor improperly referred to dismissed counts of the indictment in his opening statement and on summation; (2) there was legally insufficient evidence that petitioner intended to kill or attempt to kill; and (3) the court's instructions on "specific intent" was flawed. *Id.* ¶ 9. On March 12, 1992, the Appellate Division, First Department, affirmed the conviction holding that petitioner's claims were meritless. *Id.* ¶ 11.

On June 19, 1992, the Honorable Judith Kaye of the New York Court of Appeals denied petitioner's application for leave to appeal. *Id.* ¶ 12. On December 10, 1992, petitioner's application for reconsideration was denied. *Id.* Petitioner's conviction became final on March 10, 1993, on the expiration of his time to petition for certiorari in the Supreme Court of the United States. *See* Reply at (IX). On November 15, 1995, petitioner was placed in solitary confinement and denied access to the law library. *Id.* at (X). on November 22, 1995, petitioner received the transcript of the August 1989 trial voir dire which allegedly provided him with new and helpful evidence. *Id.*

On April 24, 1996, while petitioner was still in solitary confinement, the Antiterrorism and Effective Death Penalty Act (AEDPA) was signed into law. AEDPA amended 28 U.S.C. § 2244 by providing a one-year limitations period for the filing of federal habeas petitions. *Id.* at (XI). On May 16, 1996, petitioner was released from solitary confinement. *Id.* On January 28, 1997, petitioner mailed his first collateral

---

1. Petitioner was convicted on three counts of Murder under New York Penal Law § 125.25[1], and two counts of Attempted Murder under New York Penal Law §§ 110/125.25.

attack in the form of a writ of error *coram nobis*. *Id.* It was received by the Bronx District Attorney's Office on February 20, 1997. *See* Resp.Aff. ¶ 13. On August 21, 1997, the Appellate Division denied petitioner's *coram nobis*. *Id.* ¶ 14. On October 10, 1997, the New York Court of Appeals dismissed petitioner's application for leave to appeal the denial of the motion and on November 24, 1997, denied petitioner's motion for reconsideration. *Id.* Petitioner did not receive this decision until January 8, 1998. *See* Reply at (XII). At that time, however, petitioner had been placed back into solitary confinement, again without access to the law library. *Id.* He was subsequently transferred four times until he arrived in Auburn Correctional Facility on May 29, 1998, where he was also placed in solitary confinement. *Id.* at (XIII–XIV).

On June 2, 1998, petitioner was released from solitary confinement and his law library privileges were returned. *Id.* at (XIV). On June 17, 1998, petitioner submitted his second collateral attack by mailing a second writ of error *coram nobis*. *Id.* The motion was received by the Bronx District Attorney on June 25, 1998. *See* Resp.Aff. ¶ 15. On February 18, 1999, the Appellate Division denied petitioner's second *coram nobis*. *Id.* ¶ 16. On February 22, 1999, petitioner received the denial, and on March 5, 1999, he filed an application for a certificate of appeal. *See* Reply at (XV). On April 8, 1999, it was denied and on April 14, 1999, petitioner received the denial. *Id.*

On April 15, 1999, petitioner mailed his writ of habeas corpus to the United States District Court for the Southern District of New York. *Id.* at (XVI). The petition was filed in this Court's Pro Se office on April 22, 1999. *See* Resp.Aff. ¶ 17. On July 12, 1999, petitioner received an order to submit an "Affirmation", within 60 days, as to why the petition should not be time-barred. *See* Reply at (XVI). On August 20, 1999, petitioner sent an 18 page Affirmation, which included 40 exhibits, to then Chief Judge Griesa. *Id.* On September 9, 1999, petitioner's case was assigned to this Court, and on September 21, 1999, this Court concluded that the petition should not be summarily dismissed, and ordered the respondent to file an answer to the petition. *Id.* On December 28, 1999, respondent sent an answer to this Court. On January 6, 2000, petitioner filed his 218 page reply, which contained fourteen grounds for vacating his conviction.

## II. Applicable Legal Standard

Respondent argues that the petition is time-barred under 28 U.S.C. § 2244(d)(1).[2] If a conviction became final prior to AEDPA's April 24, 1996 enactment, a petitioner is entitled to a one-year grace period from the date of enactment.[3] The AEDPA also provides tolling provisions which can extend the time period in which to file a federal habeas petition. Under AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

---

**2.** The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by a State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)

**3.** In *Ross v. Artuz*, 150 F.3d at 102–03, the Second Circuit held that a petitioner whose conviction became final prior to the AEDPA's effective date "should be accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition".

shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Adeline v. Stinson,* 206 F.3d 249, 251 (2d Cir.2000). In *Adeline,* the Second Circuit held that this tolling provision also applies to "a petition challenging a pre-AEDPA conviction" and the one-year period determined to be applicable by *Ross. Id.* at 251 (quoting *Bennett v. Artuz,* 199 F.3d 116 (2d Cir.1999), *cert. granted,* —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000)). Filing a collateral attack in the form of a *coram nobis* petition, if pending within the one-year grace period, would trigger § 2244(d)(2)'s tolling provision. *See Smith v. McGinnis,* 208 F.3d 13, 16 (2d Cir.2000). As petitioner's conviction was final well before the AEDPA's effective date, he had until April 24, 1997 in which to file a timely habeas petition, plus any tolled time that could extend the one-year grace period.

### III. Discussion

Respondent contends that (1) petitioner's request for equitable tolling, due to his time in solitary confinement without access to the law library, should be denied because petitioner has not demonstrated extraordinary circumstances needed to equitably toll AEDPA's statute of limitations period, and (2) petitioner's attempt to appeal an unappealable decision—the Appellate Division's denial of a motion for a writ of error *coram nobis*—does not toll the one-year statute of limitations established by the AEDPA. If petitioner is unable to toll the time limit in either of the aforementioned scenarios, the petition will be time-barred. If, however, the petitioner is able to toll the statute of limitations in both instances, the habeas petition will be timely.

■ Petitioner filed his first collateral attack on January 28, 1997, 279 days after

the commencement of the one-year grace period.[4] Filing the *coram nobis* tolled the one-year grace period until August 21, 1997, when it was denied. Petitioner did not file his second *coram nobis* until June 17, 1998, an additional 289 days. The denial of the second *coram nobis* was received on February 22, 1999. Petition then filed his federal habeas petition on April 15, 1999, an additional 52 days. If petitioner is not allowed to toll the pendency of his *coram nobis* appeals, and his time in solitary confinement, 620 days would have elapsed since petitioner's conviction became final. As a result, the petition would be untimely.

■ If the time during which the appeals from the denial of the *coram nobis* writs were pending is excluded, petitioner will save 139 days, from August 21, 1997, when the first *coram nobis* was denied to November 24, 1998, when the application for reconsideration was denied, and February 22, 1999, when his second *coram nobis* was denied to April 8, 1999, when petitioner's certificate of appeal was denied.[5] This would result in his habeas petition being filed 481 days after the commencement of the one-year grace period. If petitioner is also allowed a toll during the time he was placed in solitary confinement, however, he will save an additional 216 days, from April 24, 1996, to May 16, 1996, and from November 20, 1998, to June 2, 1998. Thus, under a double tolling scenario, the habeas petition was filed only 265 days after his conviction became final.

### A. Petitioner Is Not Entitled to Equitable Tolling

■ Equitable tolling applies only in the "rare and exceptional circumstances" beyond a prisoner's control that make it impossible to file a petition on time. *See*

---

4. A pro se prisoner's papers are considered filed when they are handed over to prison officials for forwarding to the court. *See Rhodes v. Senkowski,* 82 F.Supp.2d 160, 165 (S.D.N.Y.2000); *see also Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adeline,* 206 F.3d at 251.

5. The statute of limitations resumes running when the application is denied by the courts, not on the day the prisoner receives notice of the denial. *See Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000).

*Rhodes,* 82 F.Supp.2d at 167. Until recently, the Second Circuit had not ruled on whether equitable tolling applies to the one-year statute of limitations or the grace period as clarified in *Ross.* Following the lead of other circuits, the Second Circuit recently decided in *Smith v. McGinnis,* 208 F.3d at 17, that "the one year period is a statute of limitations rather than a jurisdictional bar so that the courts may equitably toll the period." *See also Calderon v. United States Dist. Ct.,* 163 F.3d 530, 541 (9th Cir.1998) (en banc); *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.1998).

 While the burden is on the petitioner to show that extraordinary circumstances prevented him from filing the petition on time, "federal courts [must] take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Martinez v. Kuhlmann,* 99 Civ. 1094, 1999 WL 1565177, at *3 (S.D.N.Y. Dec. 3, 1999). To meet the standards of extraordinary circumstances, petitioner must be able to prove that the cause of his delay was *"both beyond his control and unavoidable even with diligence." Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir.1999) (emphasis added). *See also Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate."); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, is not valid); *Atkins v. Harris,* 98 Civ. 3188, 1999 WL 13719, at *2 (N.D.Cal. Jan. 7, 1999) ("lockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the AEDPA statute of limitations. Prisoners familiar with the routine restrictions of prison life

must take such matters into account when calculating when to file a [habeas] petition."). While solitary confinement does present an obstacle to filing a timely habeas petition, it does not qualify as an extraordinary circumstance. Here, petitioner was placed in solitary confinement without access to the law library due to his own misbehavior. Petitioner has no one to blame but himself for his increased hardship in filing a timely habeas petition, and, thus, his request for equitable tolling must be denied.

 Moreover, equitable tolling is "only proper when the principles of equity would make the rigid application [of a limitation period] unfair." *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d at 618. When a prisoner has had plenty of time to file his petition, he cannot ask for the remedy of equitable tolling to obtain extra time. "A petitioner must show he was diligent in pursuing his remedies not only during the equitably tolled period, but also during any period prior to that when he was eligible to file his petition." *McDade v. Brigano,* No. C-3-98-514, 1999 WL 126428, at *3 (S.D.Ohio Mar. 8, 1999); *see also Raynor v. Dufrain,* 28 F.Supp.2d 896, 900 n. 7 (S.D.N.Y.1998) (holding that if petitioner still has many months remaining in which to file after removal of the impediment, court would have little reason to exercise its equitable powers). Here, petitioner waited over 250 days before filing his first collateral attack. Such a long delay is fatal to his claim for equitable tolling. Thus, petitioner's misconduct, in addition to his initial delay in filing his habeas petition, makes his claim for equitable tolling unwarranted and his habeas petition untimely.

### B. The Denial of a Motion for a Writ of Error Coram Nobis Does Not Toll the Statute of Limitations.

Because I have concluded that petitioner is not entitled to a toll during the time of his solitary confinement, there is no real need to consider whether the time during which appeals from the denial of writs for *coram nobis* are pending tolls the one-year

grace period. Yet, because courts in this Circuit are split on this issue, it merits some discussion.[6]

Although AEDPA does not define what constitutes a "properly filed" motion for purposes of § 2244(d)(2), the Second Circuit has stated that a "properly filed state-court petition is pending from the time it is first filed until finally disposed of and [when] *further appellate review is unavailable* under the particular state's procedures." *Adeline*, 206 F.3d at 252 (quoting *Bennett*, 199 F.3d at 120) (emphasis added). *See Geraci*, 211 F.3d at 9 (holding that the "filing of the coram nobis order *closes the door of the New York Court of Appeals* " and a denial of a coram nobis is not available for appellate review) (emphasis added).[7] The denial of a *coram nobis,* however, is not appealable. Therefore, petitioner's attempts to appeal the denials of the *coram nobis* writs were not "properly filed", and do not toll the one-year grace period. *See Harrison,* 105 F.Supp.2d 101, 104.

Petitioner, however, claims that the rulings in *Geraci* and *Harrison* are inconsistent with the federal exhaustion requirement, which requires prisoners to fully exhaust their claims at all available levels of the state system before seeking habeas review in federal court. While the *Harrison* court acknowledged "the tension between its holding and the exhaustion requirement," it held that it was not "asking too much of state prisoners" to understand the difference. *Harrison,* 105 F.Supp.2d 105. Simply put, the decision "tells prisoners that if they seek to exhaust a claim for which there is no possibility of review in the higher court, they may be punished for their effort by the dismissal of their federal petition on statute of limitations grounds." *Id.*

It should now be perfectly clear that the denial of a writ of error *coram nobis* by an Appellate Division is not reviewable in the New York Court of Appeals. Accordingly, the appeal of this unappealable order does not toll the statute of limitations to file a federal habeas petition.

## IV. Conclusion

Because petitioner's claim for equitable tolling of the statute of limitations must be denied, the habeas petition is dismissed as untimely. The Court grants a certificate of appealability because the Second Circuit has not fully addressed the issues involved in this Opinion, and, thus, petitioner has made a substantial showing of the denial of a constitutional right (if this Court's Opinion were found to be incorrect). *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Division of Parole,* 209 F.3d 107, 112 (2d Cir.2000) (holding that substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason or (ii) a court could resolve the issues in a different manner or (iii) the questions are adequate to deserve encouragement to proceed further); *Clark v. Garvin,* 99 Civ. 9075, 2000 WL 890272, at *6 (S.D.N.Y. June 30, 2000). The Clerk of the Court is directed to close this case.

---

**6.** *Compare Sowell v. Stinson,* 72 F.Supp.2d 66, 69 (E.D.N.Y.1998), "to require a pro se petitioner to understand that he probably should attempt to appeal the denial of his coram nobis to ensure the exhaustion of state remedies, but that his appeal might not toll the statute of limitations for a federal habeas petition is asking too much", *and Valentine v. Senkowski,* 966 F.Supp. 239 (S.D.N.Y.1997) (holding that a timely appeal from the denial of a coram nobis petition should toll the one year grace period), *with Harrison v. Artuz,* 105 F.Supp.2d 101, 104 (E.D.N.Y.2000) (holding that the time spent in appealing the denial of a *coram nobis does not toll the one-year grace period* ) (emphasis added).

**7.** The *Geraci* opinion holds that a *coram nobis* cannot be appealed and implies that any time after the denial of it cannot be seen as pending in order to toll the statute of limitations. It does not, however, directly address the issue of tolling the appeal of a denial of a writ of *coram nobis.*