McGonagle v. US                      CV-02-073-M    10/23/02
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Patrick McGonagle,
        Petitioner,                          Civil No. 02-73-M

Anthony Shea,
        Petitioner,                          Civil No. 02-75-M

Matthew McDonald,
        Petitioner,                          Civil No. 02-84-M

Michael O'Halloran,
        Petitioner,                          Civil No. 02-88-M

Stephen Burke,
        Petitioner,                          Civil No. 02-90-M


        v.                                   Opinion No. 2002 DNH 185


United States of America,
        Respondent


                          **O R D E R**


        In 1997, a federal grand jury returned a second superceding

indictment charging Anthony Shea, Michael O'Halloran, Matthew

McDonald, Stephen Burke, Patrick McGonagle (collectively,

"Petitioners")[1] and John Burke with numerous offenses relating to

_____

        [1]     The means by which _state_ prisoners seek federal habeas
relief are typically referred to as either "applications," _see_ 28
U.S.C. § 2254, or "petitions," _see, e.g.,_ _Williams v. Taylor_, 529

a series of bank and armored car robberies that occurred between 1990 and 1996.  During the trial, co-defendant John Burke decided to change his plea to guilty.  After pleading guilty, John Burke was called as a witness by the government and testified against his co-conspirators in the ongoing trial.

The trial continued for three months.  At its conclusion, the jury convicted petitioners on all counts charged against them in a redacted, 14 count indictment, with one exception.  As to petitioner McGonagle (who was charged in five of the 14 counts), the jury returned a verdict of "not guilty" on a carjacking charge related to an armored car robbery that took place in Hudson, New Hampshire, during which two guards were murdered. The court of appeals summarized the jury's verdict as follows:

> All five of the defendants were convicted of conspiracy
> to commit armed robberies and of committing and
> conspiring to commit the Hudson robbery.  All of the
> defendants except McGonagle were convicted of operating

<hr>

U.S. 362 (2000).  As to federal prisoners, however, section 2255 employs slightly different nomenclature, referring instead to "motions."  But, as the court of appeals for this circuit has noted, the term "petition" is more commonly used "to describe the vehicle by which a person held in custody seeks post-conviction relief."  Raineri v. United States, 233 F.3d 96, 97 n.1 (1st Cir. 2000).  Accordingly, the court will use the terms "petition" and "petitioners" throughout this opinion.

a racketeering enterprise, engaging in a racketeering conspiracy, carjacking in connection with the Hudson robbery, and of various firearms offenses. Shea, [Stephen] Burke and O'Halloran were also convicted of committing and conspiring to commit the Seabrook armored car robbery.

United States v. Shea, et al., 211 F.3d 658, 664 (1st Cir. 2000), cert. denied, 531 U.S. 1154 (2001). Shea, O'Halloran, McDonald, and Burke were sentenced to life imprisonment. McGonagle was sentenced to 360 months.

The court of appeals affirmed petitioners' convictions and the sentences imposed under the United States Sentencing Guidelines, with one exception. As to McDonald's convictions for being a felon in possession of a firearm and a drug user in possession of a firearm, the court concluded that, while the "multiple convictions" were not clear error, McDonald could not be punished for both crimes. Accordingly, the court vacated McDonald's sentence on the drug user-in-possession count, with instructions to merge the sentence for that offense with that imposed on the felon-in-possession count. Id. at 676. As a practical matter, however, the court of appeals' decision had no impact on McDonald's life sentence.

3

Petitioners' convictions became "final" on February 20, 2001, when the United States Supreme Court denied their petitions for certiorari. Shea, et al. v. United States, 531 U.S. 1154 (2001). Petitioners have filed timely petitions seeking habeas corpus relief pursuant to 28 U.S.C. § 2255. Although each has filed a separate petition, those submitted by Shea, O'Halloran, and McDonald are virtually identical. Burke's petition mirrors the others in large measure, but adds a few unique claims. McGonagle seeks habeas relief on a single ground not raised by the other petitioners.[2] Accordingly, except where specifically noted, the court's discussion of the issues raised in Shea's petition applies with equal force to all petitioners.

**Standard of Review**

I.   28 U.S.C. § 2255 Generally.

Petitioners seek habeas corpus relief under 28 U.S.C. § 2255, which provides:

---

[2]   McGonagle also says he "joins" in the petitions filed by the others, but he has not filed a motion seeking leave to do so. Nevertheless, given his pro se status, the court will consider McGonagle's petition as including the claims and arguments advanced by his fellow petitioners.

4

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The relief afforded by § 2255 is, however, available in only limited circumstances. See, e.g., United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) ("a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.") (citation and internal quotation marks omitted). As the court of appeals for this circuit has observed, "[s]ection 2255 is not a surrogate for a direct appeal." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). See also United States v. Frady, 456 U.S. 152, 165 (1982).

Absent an intervening change in the applicable law, or compelling equitable considerations, inmates seeking habeas relief are typically barred from raising the same issues in a § 2255 petition that were previously raised on direct appeal. See Conley v. United States, __ F.3d __, 2002 WL 1477843 at *4 (1st Cir. July 15, 2002). Moreover, absent a showing of "cause and actual prejudice," petitioners are precluded from litigating issues in a habeas proceeding that could have been, but were not, raised on direct appeal (commonly known as "procedurally defaulted" claims). See, e.g., Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

II. Ineffective Assistance of Counsel.

Importantly, however, "the failure to bring a claim of ineffective assistance of counsel on direct appeal is not subject to the cause and prejudice standard." Knight, 37 F.3d at 774. So, inmates aware of the restrictions imposed on § 2255 petitions typically attempt to couch challenges to underlying criminal convictions in terms of the Sixth Amendment, claiming that the asserted errors were the product of constitutionally deficient

6

counsel.  So it is here with regard to the majority of claims advanced by petitioners.

To prevail on an ineffective assistance of counsel claim, a petitioner must "show, by a preponderance of the evidence, that trial counsel's conduct fell below the standard of reasonably effective assistance and that counsel's errors prejudiced the defense."  Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  See also Cofske v. United States, 290 F.3d 437 (1st Cir. 2002).  In assessing the quality of trial counsel's representation, the court employs a highly deferential standard of review and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Strickland, 466 U.S. at 689 (citation and internal quotation marks omitted).  In other words, to satisfy the first prong of the Strickland test, a petitioner must demonstrate that his counsel made errors that were "so serious that counsel was not functioning as the 'counsel'

7

guaranteed the defendant by the Sixth Amendment."  Smullen v.
United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting
Strickland, 466 U.S. at 687)).

To satisfy the second prong of the Strickland test, a
petitioner must show "actual prejudice."  As the court of appeals
has observed, "prejudice exists in a particular case when there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Gonzalez-Soberal, 244 F.3d at 278 (citation and
internal quotation marks omitted).  A reasonable probability is
"one sufficient to undermine confidence in the outcome."  Id.
(citation omitted).

**Grounds for Relief Advanced by All Petitioners**

I.   Ground One - Jury Instructions.

Petitioners' first asserted ground for relief under § 2255
challenges the sequence in which the jury received instructions
on the law and counsel provided closing argument.  Specifically,
petitioners say their counsel (both trial and appellate) provided
ineffective representation by failing to object when the court

8

instructed the jury <u>prior</u> to closing arguments - a procedure they say resulted in a "structural error" that deprived them of (unspecified) constitutional rights – and by failing to raise that issue on appeal. Petitioners also challenge (through an ineffective assistance claim) the fact that the court provided each juror with written instructions and allowed him or her to take the instructions home.[3]

With regard to the timing of closing arguments, the court agreed, at the charging conference, to instruct the jury prior to closing arguments only if all defendants and the prosecution preferred that order. Some counsel wanted the jurors to be instructed on the applicable law before they heard counsels' closings, others were ambivalent, but in the end all agreed. In any event, Rule 30 of the Federal Rules of Criminal Procedure provides that, "The court may instruct the jury before or after the arguments are completed or at both times." Thus, there is

_____

[3]    Petitioners raise additional issues related to jury instructions and closing argument that are so plainly without merit they warrant no discussion (e.g., challenging the fact that the government was given a "second bite at the apple" - i.e., rebuttal argument; use of section headings in the written jury instructions; etc.). It is sufficient to note that those alleged defects in the trial (and petitioners' related assertions of ineffective assistance of counsel) do not warrant habeas relief.

nothing unlawful or inappropriate about instructing the jury prior to closing arguments, even in the absence of agreement, or over the objection of one or more defendants. And, even if it were error to instruct before closing argument, petitioners have failed to articulate any meaningful way in which they were prejudiced by that procedure.

As to the fact that jurors were provided with copies of written jury instructions, petitioners say they suffered "actual prejudice from jurors being unfairly given the entire evening of December 9, 1997, to review evidence and think about jury instructions, alone and unsupervised." Shea's petition at 9. Petitioners add that "[n]o cautionary instructions were given directing jurors not to begin mental deliberations during government closing argument and to wait until after they gave equal consideration to defense closing argument." Id. at 12.[4]

---

[4]    While petitioners are correct insofar as they point out that the court did not instruct the jury to refrain from engaging in "mental deliberations" until after defense counsel had given their closing arguments, the court did specifically instruct the members of the jury about their use of the written instructions. See Transcript of trial day 50 (document no. 908) at 75 and 156.

10

Petitioners make much of their concern that, by having instructions on the applicable law prior to closing arguments, jurors likely began "mental deliberations" before actually convening in the jury deliberation room, after all closing arguments were complete. It is reasonable to assume that the jurors began considering and weighing the evidence long before formal deliberations began, and before the court instructed them on the applicable law (e.g., assessing the credibility of witnesses as they testified; making ongoing determinations as to whether a particular piece of evidence was relevant and, if so, how it might fit into the government's or defendants' theory of the case, as described in opening statements; etc.). Jurors are, of course, permitted to do just that. What they are (and, in this case, were) specifically (and repeatedly) instructed not to do is make up their minds about any defendant's guilt or innocence until after all the evidence is in and closing arguments are complete. In short, while petitioners are probably correct that the jurors engaged in "mental deliberations" during the course of trial – if by that petitioners mean "jurors thought about the evidence and its relevance to the crimes charged" – that fact does not entitle petitioners to habeas corpus relief.

11

Nor does the fact that the court provided jurors with copies of the written instructions entitle petitioners to habeas relief. First, such a practice is plainly authorized and committed to the court's sound discretion.  See, e.g., United States v. Blane, 375 F.2d 249, 255 (6th Cir. 1967) (collecting cases).[5]  Second, petitioners have failed to point to any prejudice that they might have suffered as a consequence.  To the contrary, ordinarily, providing jurors with written instructions actually favors the defendant(s).  Written instructions enable each juror, during deliberations, to focus on every essential element as to which the government bears the burden of proof beyond a reasonable doubt.  That practice tends to increase the likelihood that, should the jury return a guilty verdict, it is firmly based on the applicable law, rather than on some vague memory of lengthy oral instructions, or on a general sense of the defendant's guilt or innocence or, even worse, based simply on a generalized feeling about the defendant's character.  Particularly in complex cases such as this, that involve lengthy, detailed, multiple count indictments, and highly complicated aspects of criminal

---

[5]  The court of appeals' opinion in United States v. Parent, 954 F.2d 23 (1st Cir. 1992), is plainly inapplicable to the facts of this case and petitioners' reliance on that opinion is misplaced.

law, the more familiar the jury is with the applicable law, the more certain its verdict will be based on an accurate application of that law to the particular facts of the case.

II.  Ground Two - Security Procedures.

As their next ground for habeas relief, petitioners assert that they were subjected to unlawful "security procedures" in the courtroom which deprived them of a fair trial.  Specifically, petitioners say that because they were required to wear leather leg restraints during the course of trial, jurors were likely biased against them, resulting in an unfair trial.  They also challenge the court's decision to empanel a partially anonymous jury.  Again, the alleged errors are couched in terms of a claim that defense counsel were ineffective in failing to object to the challenged procedures and/or failing to adequately raise the issue on appeal.

A.  Use of Leg Restraints.

After the court, in consultation with the United States Marshall, determined that defendants posed a serious security risk, it ordered that each defendant wear leg restraints during

13

the course of trial.  See generally United States v. Mayes, 158 F.3d 1215, 1225-27 (11th Cir. 1998) (discussing the various factors that should inform a trial court's discretion when deciding whether and, if so, how to restrain potentially dangerous or violent defendants); United States v. Collins, 109 F.3d 1413, 1418 (9th Cir. 1997) (same).  In this case, leather leg restraints lined with wool were used as an alternative to traditional leg "irons" so each petitioner could move in his chair and change position without making any noise likely to alert jurors to the fact that he was restrained in some manner.  Leather leg restraints were also employed as the least restrictive means available by which to control petitioners' movement.[6]

Moreover, the courtroom furniture was rearranged so each of the tables at which petitioners sat was facing the jury box, thereby preventing any member of the jury from seeing petitioners' feet or legs (the tables at which counsel and

---

[6]    In consultation with the United States Marshall, the court briefly considered the use of "taser belts," but, largely at the urging of the Marshall, rejected that as an option.  See generally Collins, 109 F.3d at 1418 (discussing the court's rejection of taser belts).

petitioners sat were equipped with front and side panels that extended to the floor). And, all defendants were brought into the courtroom and seated at their respective tables before the jury was ever brought into the courtroom. Obviously, defendants were also cautioned about intentionally displaying the restraints. Similarly, the jury was always dismissed from the courtroom before any petitioner was permitted to move from behind the tables or leave the courtroom. In short, effective steps were taken to insure that no member of the jury was ever made aware of the fact that petitioners' legs were restrained.

In fact, petitioners do not suggest that any member of the jury was ever aware that they were restrained. See, e.g., Mayes, 158 F.3d at 1226 ("In Illinois v. Allen, the Supreme Court observed that 'the sight of shackles . . . might have a significant effect on the jury's feelings about the defendant.' The restraints in this case were not capable of affecting the jury's attitude in any way because the district court took great care to ensure that the jury never saw that the appellants were wearing leg irons.") (citation omitted). See also United States v. Baker, 10 F.3d 1374, 1402 (9th Cir. 1993), overruled on other

15

grounds, 225 F.3d 1053 (9th Cir. 2000). Consequently, petitioners have failed to identify any harm or other prejudice resulting from the challenged procedures, or from trial counsels' failure to adequately object to those procedures, or from appellate counsels' failure to pursue the issue on appeal. Petitioners are not, therefore, entitled to habeas relief on that basis.

B. Anonymous Jury.

Prior to trial, the court provided each petitioner with a copy of a proposed order concerning the empanelment of a partially anonymous jury. The government and all petitioners were afforded the opportunity to comment on and/or object to that proposed order. Following extensive discussion with the parties, the court found that the circumstances of this case warranted the empanelment of a partially anonymous jury - that is, the names of the members of the jury pool would be provided to counsel (and their support staff), but they would not be permitted to share potential jurors' names with their clients. See generally 28 U.S.C. § 1863(b)(7). Petitioners challenge the court's ruling, saying:

16

> [The] [a]bsence of sufficient voir dire and exacerbating erroneous cautionary instructions given, combined with the absence of adequate trial cautionary instructions and total omission of final jury instructions aimed at mitigating or negating prejudice created by jurors knowing they were anonymous and knowing trial court believed defendants were extremely dangerous and precluded from knowing jurors names/addresses, is pled as violating constitutional presumption of innocence.

Shea's petition at 27.

Petitioners generally allege that, had their counsel acted in a reasonable and professional manner, they could have (and should have) prevented the court from empaneling a partially anonymous jury (alternatively, they say appellate counsel was constitutionally deficient by failing to adequately present the issue on appeal). And, due to counsels' allegedly deficient representation, petitioners say they were prejudiced "by not knowing surnames and addresses of jurors thereby preventing [petitioners] from knowingly and intelligently exercising peremptory challenges to jurors who live near other uncharged crime spree locations involved with co-petitioner's alleged invasion of the State of New Hampshire." Id.

17

Again, petitioners have failed to plead facts that meet either prong of the Strickland test.  First, they have not pointed to anything that might suggest that counsel was constitutionally deficient in this regard.  Although the empanelment of an anonymous (or even partially anonymous) jury is an "extraordinary protective device," United States v. DeLuca, 137 F.3d 24, 31 (1st Cir. 1998), which should be used in only limited circumstances,

> it is a permissible precaution where (1) there are
> strong grounds for concluding that it is necessary to
> enable the jury to perform its factfinding functions,
> or to ensure juror protection; and (2) reasonable
> safeguards are adopted by the trial court to minimize
> any risk of infringement upon the fundamental rights of
> the accused.

Id.  See also United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998).  In this case, the court found that the empanelment of a partially anonymous jury was necessary to ensure juror protection and enable the jury to perform its functions without fear of inappropriate interference.  And, appropriate safeguards were adopted to ensure that petitioners' fundamental rights were not adversely affected.

18

Moreover, petitioners have not shown how they might have suffered actual prejudice as a result of counsels' alleged deficient conduct in failing to adequately object to (or raise on appeal) the court's decision in this regard.  Counsel representing each petitioner (as well as counsels' support staff) had complete access to jurors' personal information and, notwithstanding petitioners' claims to the contrary, were fully able (to the extent they deemed necessary and/or appropriate) to exercise peremptory challenges based on that information.

Petitioners' remaining challenges to the security procedures employed during trial (again, presented in the context of a Strickland claim) are equally unavailing and the record conclusively reveals that they are not entitled to habeas relief on any of the grounds advanced.  See 28 U.S.C. § 2255.

III. Ground Three - Flawed Jury Instructions.

Again recognizing that the failure to raise objections to the jury instructions on direct appeal severely restricts their ability to pursue that issue in the context of a habeas petition, petitioners assert that counsel rendered constitutionally

19

deficient assistance by failing to challenge the instructions on appeal. Specifically, petitioners say their "convictions were unlawfully obtained and affirmed through prejudicial instruction omissions, unbalanced or erroneous jury instructions, and related errors [that trial counsel] had no strategic basis for not objecting to or failing to request correct instructions, and which appellate counsel had no strategic reason for failing to present in the direct appeal." Shea's petition at 34.

A.  Lack of "Alibi" Instruction.

None of the petitioners (acting through counsel) requested the court to provide an "alibi" instruction to the jury, nor did any of the petitioners object to the absence of such an instruction. No doubt because the issue was not raised on appeal (and is, therefore, procedurally defaulted), petitioners advance it in the context of an ineffective assistance of counsel claim; that is, they say their trial and appellate counsel rendered constitutionally deficient assistance by failing to raise the issue at the appropriate time (e.g., at trial and then again on appeal).

Even if the court were to assume that both trial and appellate counsel were constitutionally deficient in the way they handled the alibi instruction issue, petitioners still cannot carry their burden with regard to the second element of the Strickland test. That is to say, petitioners cannot demonstrate that they were prejudiced by the lack of a specific "alibi" instruction.

The primary purpose of an "alibi" instruction is to "remind the jury as to the government's burden of demonstrating all elements of the crime beyond a reasonable doubt, including defendant's presence at the crime scene." United States v. McCall, 85 F.3d 1193, 1196 (6th Cir. 1996).[7] Notwithstanding the absence of a specific alibi instruction, the instructions given to the jury made abundantly clear the extent of the government's substantial burden of proof with regard to every essential element of each crime charged. See, e.g., Jury Instructions

_____

[7] Parenthetically, the court notes that, except for the firearms and RICO charges, each count in the second superceding indictment charged petitioners with either "aiding and abetting" the substantive crime alleged, or conspiracy. Consequently, the jury did not have to conclude that petitioners were actually present at the scene of any one or more of the alleged crimes in order to return a guilty verdict.

21

(document no. 873.3) at 17-19 (presumption of innocence and government's burden of proof); 19-20 (government's burden of proof); 93 (government must prove every essential element of crime charged beyond a reasonable doubt). Jury members were well aware that, to the extent their verdict as to any petitioner on any specific count required a finding that he was physically present in a particular location at a particular time, they were required to unanimously agree that the government had proved that fact beyond a reasonable doubt.

Additionally, counsel for petitioners, where appropriate, strenuously argued that their clients had alibis for various crimes (and overt acts) alleged in the indictment. See, e.g., Closing argument on behalf of Stephen Burke, transcript of trial day 52 at 10 (noting that Burke held a full time job and there was no "evidence in this case by the government that Mr. Burke missed work on the day of any robbery that he is charged with in the indictment."); 13 (no surveillance evidence of Burke's presence); 51-52 (discussing evidence suggesting Burke was at Shoreway Acres on the day of the Hudson armored car robbery); 57-58 (discussing evidence suggesting Burke was not in Florida when

22

West Palm Beach robbery took place); Closing argument on behalf of Patrick McGonagle, transcript of trial day 53 at 45-48 (discussing evidence suggesting that McGonagle could not have participated in the Hudson robbery); Closing argument on behalf of Michael O'Halloran, transcript of trial day 53 at 67-68 ("[T]hat's real alibi evidence, ladies and gentlemen. And I mean in a true sense. Not an alibi that somebody makes up to avoid very serious liability."); 74 (discussing work records that demonstrate O'Halloran could not have been present at the scene of the Norwell robbery). In fact, the jury appears to have credited McGonagle's alibi defense to the carjacking charge, insofar as its "not guilty" verdict suggests that it concluded he was not present at the scene of the crime and did not participate in the carjacking.

In short, petitioners have failed to demonstrate that any prejudice resulted from the lack of a specific "alibi" instruction. See, e.g., McCall, 85 F.3d at 1196 (concluding that there is no plain error in failing to give an alibi instruction "as long as the jury is otherwise correctly instructed concerning the government's burden of proving every element of the crimes

charged, and the defendant is given a full opportunity to present his alibi defense in closing argument."); United States v. Dawn, 897 F.2d 1444, 1450 (8th Cir. 1990) ("The alibi defense was argued in closing, the jury was clearly instructed that the government had to prove all elements of the charge beyond a reasonable doubt, and the evidence against [defendant] was relatively strong.  The error, if any, [in failing to give an alibi instruction] was clearly harmless.").[8]

B.    Lack of Evidence of Insurance by FDIC.

Next, petitioners challenge defense counsels' failure to seek judgments of acquittal with regard to the bank robbery

---

[8]    Petitioners also appear to take issue with trial counsels' alleged refusal to call certain witnesses (including petitioners themselves), whom petitioners now assert could have provided alibis for certain crimes and/or overt acts alleged in the indictment.  Petitioners have failed, however, to provide affidavits from those alleged witnesses, detailing what relevant testimony they were prepared to offer, had they been called to testify.  Consequently, petitioners cannot show that they were prejudiced by what were likely strategic decisions made by counsel in determining that those witnesses (including petitioners themselves) could not provide sufficient evidence helpful to the defense to warrant the risks associated with calling them to testify.  See generally Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.").

charges (or press the issue on appeal), saying the government failed to introduce any evidence that the subject banks were insured by the FDIC. That assertion is, however, factually incorrect. On November 19, 1997 (trial day 41), the government introduced documentary evidence demonstrating that the banks referenced in count 8 (bank robbery) - First NH Bank and NFS Savings Bank - were insured by the FDIC.

> Government: Your honor, I have two exhibits, certified records of public documents to offer . . . .
>
> The Court: All right. Any objection? Does counsel know what they are?
>
> Government: These are [exhibits] 150 for identification and 151 [for identification], FDIC certified records that on August 25th, 1994, the NFS Bank in Hudson, New Hampshire, was insured by the FDIC. And as to First New Hampshire Bank on August 25, 1994, First New Hampshire Bank in Hudson, New Hampshire, was insured by the FDIC.
>
> The Court: Any objections?
>
> Counsel: No your honor.
>
> The Court: ID may be stricken on Government's 150 and 151.

Transcript, Trial Day 41, November 19, 1997, at 153-54.  <u>See also</u>
<u>Corrected USA Exhibit List</u> (document no. 671).


   C.   <u>Instructions on Aiding and Abetting Armed Robbery</u>.

   Petitioners also challenge the court's instruction with
regard to an element of the government's burden of proof as to
count eight of the second superceding indictment.  Specifically,
petitioners take issue with the court's instruction that, before
any defendant could be convicted of aiding and abetting armed
bank robbery, the government had to prove:

     that the defendant was "on notice of the likelihood" of
     the use of a firearm by at least one accomplice.  "On
     notice of the likelihood" does not mean that the
     defendant had actual knowledge that a firearm would be
     used in the robbery; only that, under the
     circumstances, he knew that it was reasonably likely
     that a firearm would be used.

Jury Instructions (document no. 837.3) at 30.  Petitioners
suggest that the instruction provided by the court (to which
counsel did not object) unconstitutionally lowered the
government's burden of proof - that is, it permitted the jury to
convict without proof that a defendant had <u>actual</u> <u>knowledge</u> that
a firearm would be employed during the course of the robbery.

26

While petitioners' point is an interesting one, it is legally incorrect.[9]  The challenged instructions given by the court were entirely consistent with both First Circuit precedent and applicable constitutional requirements.  See, e.g., United States v. Sanborn, 563 F.2d 488, 491 (1st Cir. 1977) ("the Government must show that the accomplice knew a dangerous weapon would be used or at least that he was on notice of the likelihood of its use.") (emphasis supplied).  See also United States v. Spinney, 65 F.3d 231, 236 (1st Cir. 1995).  Consequently, as to that issue, petitioners cannot carry their burden with regard to either prong of the Strickland test.

---

[9]  It is possible that petitioners are thinking of the higher standard of proof that applies to aiding and abetting the use of a firearm during a crime of violence, as charged in counts 6 and 12.  The jury instructions provided with regard to those crimes, however, properly informed the jury of the government's heightened burden of proof.  See Jury Instructions at 42-43.  See generally United States v. Spinney, 65 F.3d 231, 236 (1st Cir. 1995) (observing that the "notice of likelihood" burden of proof imposed on the government in cases charging aiding and abetting armed bank robbery under 18 U.S.C. § 2113 "stands in marked contrast - almost as point and counterpoint - to the 'practical certainty' formulation that courts have developed for assessing the shared knowledge requirement applicable to aiding and abetting firearms charges brought under 18 U.S.C. § 924(c).").

D.   Other Challenges to Jury Instructions.

Petitioners' remaining challenges to the jury instructions (e.g., flawed definition of circumstantial evidence; the court's failure to instruct jury that the presumption of innocence continues "throughout trial[,] right into final group deliberations," Shea's petition at 38; the use of topical headings in written instructions) are patently frivolous and without merit.  As such, they fail to constitute a viable basis for habeas relief.

IV.   Ground Four - Alleged Brady Violations.

As their fourth asserted ground for habeas relief, petitioners say the prosecution committed several Brady violations, by failing to provide them with exculpatory material allegedly in the possession of the government.  See generally Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, petitioners say they were not provided with (and counsel did not adequately seek production of) the following:

1.   "The government's National Crime Information Center (NCIC), or other agency, computer printout of nationwide similar modus operandi major robbery suspects or robbery crews."

28

2. "The complete unredacted and unedited call-in, informant or other tips file, reports, 302's, documents on other suspected perpetrators for both Seabrook and Hudson robberies, with all follow-up other suspect investigation reports (to show inept, bungling, biased, and incomplete investigation of other suspects)."

3. The complete terms of the government's deal with defendant-turned-cooperating-witness John Burke.

Shea's petition at 44-47. As the Supreme Court has observed, "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). See also Giglio v. United States, 405 U.S. 150 (1972).

As to the government's alleged failure to disclose the terms of its "agreement" with John Burke, that issue was fully addressed in petitioners' motion for a new trial and again on appeal. See Shea, 211 F.3d at 675-76. See also United States v. Burke, Cr. No. 96-50-1-6-M (D.N.H. Jan. 4, 1999) (court's order

29

on petitioners' motion for a new trial).  As to the government's alleged failure to provide NCIC reports on similar crimes, petitioners have failed to establish that such information even falls within the scope of Brady - that is, that the evidence allegedly suppressed was in any way exculpatory or that it might constitute impeachment evidence.  Moreover, petitioners have not shown how such information might be "material."  In other words, petitioners have failed to show that the government's alleged suppression of the evidence in question resulted in an unfair trial, understood as one that produced a verdict that is not worthy of confidence.  See Kyles v. Whitley, 514 U.S. 419, 434 (1995).  See generally Strickler, supra.

As the court of appeals observed, "[t]he evidence against [petitioners] was substantial and rested on a number of witnesses, much forensic evidence, and a series of admissions and co-conspirator statements."  Shea, 211 F.3d at 675.  The possibilities that petitioners might have been able to use the allegedly suppressed materials to suggest that other criminals committed the crimes with which they were charged, or that they might have more effectively cross-examined Burke with the terms

30

of his "agreement" with the government, would not have changed the outcome of their trial, nor do those remote possibilities undermine confidence in the jury's verdict to any degree at all. See Id. Consequently, petitioners are not entitled to habeas relief with respect to their claim that counsel was ineffective for having failed to adequately pursue those issues.

V.    Grounds Five and Six - Evidentiary Rulings.

Finally, petitioners point to several alleged errors in the court's jury instructions and assert that certain co-conspirator statements were improperly admitted into evidence, in violation of their rights under the Confrontation Clause. Those issues were, however, raised, addressed, and resolved against petitioners on appeal. See Shea, 211 F.3d at 668 (hearsay issues) and 672-73 (jury instructions/Apprendi issues). Petitioners have failed to demonstrate that those issues may be relitigated in the context of their habeas petitions. See, e.g., Conley, 2002 WL 1477843 at *4 ("Claims that previously have been addressed on direct review, however, may not be readjudicated collaterally under § 2255 absent equitable considerations, such as actual innocence or cause and prejudice.").

31

**Unique Grounds for Relief Advanced by Stephen Burke**

I.   Sufficiency of the Evidence - RICO Conspiracy.

As his first independent ground for habeas relief, Burke asserts that, with regard to the RICO conspiracy charge, "there is no evidence which supports a finding of an 'enterprise.'" Burke's petition at 43. That issue was, however, resolved against him on appeal, Shea, 211 F.3d at 665, and he has failed to show that he may relitigate that claim in the context of his habeas petition.

II.  Apprendi and the Carjacking Conviction.

As with his claim regarding the RICO conspiracy count, Burke's second ground for habeas relief - an alleged Jones/Apprendi violation - was fully litigated on appeal. The court of appeals concluded that:

> In retrospect, the failure to instruct on the "if death results" requirement was "error" under Jones, but it was patently harmless. The government introduced at trial photographs of the dead guards and testimony from the state's assistant deputy medical examiner, who participated in and testified about the autopsies. Witnesses testified that each of the four defendants had admitted that the guards were killed during the robbery, and the defendants did not contest the point. [Consequently], we conclude "beyond a reasonable doubt that the omitted element was uncontested and supported

by overwhelming evidence," so the error in instruction was "harmless."

Shea, 211 F.3d at 672 (citations omitted).

Burke's remaining claims (e.g., the court lacked subject matter jurisdiction; other insufficiency of the evidence claims, previously resolved on appeal; etc.) are without merit and warrant little discussion, beyond noting that the record conclusively shows that Burke is not entitled to habeas relief on the grounds advanced.

**Unique Grounds for Relief Advanced by Patrick McGonagle**

Patrick McGonagle also asserts an independent basis for habeas relief. He says he was prejudiced by ineffective assistance of counsel (both at sentencing and on appeal), when, pursuant to section 2B3.1(c)(1) of the United States Sentencing Guidelines (1996 ed.),[10] 6 points were added to his offense level because a victim was killed during the course of the Hudson armored car robbery "under circumstances that would constitute

---

[10]     Unless specifically noted to the contrary, all references are to the 1996 edition of the United States Sentencing Guidelines.

33

murder under 18 U.S.C. § 1111." Id. Because of that cross-reference, McGonagle's total offense level was increased from 37 to 43, the base offense level for first degree murder (though the court subsequently granted McGonagle a downward departure to level 40, based upon his comparatively lesser culpability for the murders).

McGonagle was convicted on the following counts in the redacted second superceding indictment: count 3 (conspiracy to commit armed robberies); count 8 (the Hudson bank/armored car robbery); count 9 (conspiracy to commit the Hudson robbery); and count 10 (robbery). He was, however, acquitted on count 11, which charged that he committed (or aided and abetted others in committing) carjacking, by using force, violence, and intimidation to take an armored car from the guards who were subsequently murdered.

The thrust of McGonagle's argument is that a defendant "cannot be held liable at sentencing for first-degree murder when he doesn't kill, intend to kill, and is not at the scene of the crime." McGonagle's petition at 6. He plausibly infers from the

34

fact that the jury acquitted him on the carjacking count that it concluded he was not present at the scene of the Hudson robbery. Consequently, he says:

> In this particular case, the jury found - as the Court took note - that Petitioner was not at the scene of the crime. He did not participate in any killing, and there wasn't any evidence that killing was part of the robbery plan. Moreover, under the facts of this case, it must be recalled that Petitioner's absence from the scene or a specific plan to kill denied him an opportunity to prevent the killings - obviously the reason behind not holding a person liable for first-degree murder when he's neither present at the scene, does not intend to kill, nor when killing is not part of the robbery plan.

Id. at 6-7. McGonagle did not raise this issue on appeal. See Shea, 211 F.3d at 673 ("In a pure sentencing issue, O'Halloran and three other defendants (all except McGonagle) object to the court's computation of their sentences insofar as the court relied on a cross-reference to the sentencing guideline for first-degree murder."). Accordingly, he advances the issue now in the context of an ineffective assistance of counsel claim, saying counsel should have, but failed to raise the issue on appeal. As a result of counsel's allegedly deficient performance, McGonagle says his "rights under the Due Process,

35

Equal Protection, and Cruel and Unusual clauses of the U.S. Constitution" have been violated.  McGonagle's Petition at 3.

The government has, inexplicably, failed to respond to McGonagle's petition (notwithstanding the fact that he has repeatedly pointed out the lack of any government objection). Nevertheless, McGonagle's petition necessarily fails because, even if his counsel had raised the issue on appeal, McGonagle would not have prevailed.  Therefore, the "error" by counsel (if any) was entirely harmless.  The court's application of U.S.S.G. § 2A1.1 (pursuant to the cross-reference provision in U.S.S.G. § 2B3.1(c)(1)) to McGonagle was legally correct and did not result in the violation of any of his constitutionally protected rights.

As the court observed at McGonagle's sentencing hearing, he was convicted of, among other things, conspiracy to commit the Hudson armored car robbery, and the Hudson armored car robbery itself.  During the course of that armed robbery, two victims were "killed under circumstances that would constitute murder under 18 U.S.C. § 1111."  U.S.S.G. § 2B3.1(c)(1).  It follows that application of the first-degree murder guideline was both

correct and appropriate.  <u>See generally</u> Transcript of McGonagle's

sentencing (May 8, 1998) at 31.  But, because, the court agreed

that McGonagle did not share the same degree of culpability as

his co-defendants, it departed downward three levels.

> I agree with Mr. Kenna [counsel for McGonagle] to the
> extent that I believe the jury necessarily found that
> Mr. McGonagle's role was not of the same degree of
> culpability and [he] may not have been at the scene [of
> the murders], although I agree with [the government]
> that's an open issue.  But for purposes of sentencing,
> I'm going to accept what I believe to be the jury's
> determination that Mr. McGonagle was not at the scene
> of the actual carjacking, and therefore, did not
> knowingly or intentionally kill either of the guards
> himself.

<u>Id.</u> at 65.  <u>See also</u> U.S.S.G. § 2A1.1, application note 1.

While the court accepted, for sentencing purposes, the fact

that McGonagle was not present at the scene of the murders, that

does not render application of the first-degree murder guideline

unconstitutional or otherwise unlawful.  As the Court of Appeals

for the Fifth Circuit has observed:

> The English common law provided that one who caused
> another's death while committing or attempting to
> commit a felony was guilty of murder even though he did
> not intend to kill the deceased.  Section 1111(a)

applies the felony murder rule to arson and other enumerated felonies.

United States v. El-Zoubi, 993 F.2d 442, 449 (5th Cir. 1993) (citation omitted).  See also United States v. Tham, 118 F.3d 1501, 1508 (11th Cir. 1997).  Included in the "other enumerated felonies" referenced by the Fifth Circuit are robbery and attempted robbery.  18 U.S.C. § 1111(a).  See also U.S.S.G. § 2A1.1, application note 1.  "Proof of premeditation or deliberation is not required under the felony murder component of § 1111."  El-Zoubi, 993 F.2d at 449.  Nor need the defendant even be present at the scene of the crime in order to be liable under the felony murder component of § 1111(a).  See United States v. Pearson, 203 F.3d 1243 (10th Cir.) (cross-reference to § 2A1.1 was properly applied to defendant who drove the getaway car in a robbery during which a victim was fatally shot), cert. denied, 530 U.S. 1269 (2000); Tham, 118 F.3d at 1503-04 (cross-reference to § 2A1.1 was properly applied to defendant who dropped co-conspirators off at scene of arson that resulted in death of one of the co-conspirators); El-Zoubi, 993 F.2d at 445 (district court should have applied cross-reference to § 2A1.1 to defendant

who paid his nephew to commit arson, during the course of which the nephew died).

In short, because he was convicted of the Hudson robbery, the fact that McGonagle may well have been absent from the actual scene of the murders that occurred during the course of that crime does not render application of the cross-reference to U.S.S.G. § 2A1.1 unconstitutional or otherwise unlawful. His comparatively lesser role in those murders was properly taken into account, though it need not have been, when the court granted him a discretionary downward departure from the otherwise applicable offense level. Consequently, the record conclusively reveals that McGonagle is not entitled to habeas relief on the ground advanced.

**Petitioners' Motions to Amend to Add <u>Brady</u> Claims**

Petitioners Shea, McDonald, O'Halloran, and Burke, have all filed identical motions seeking leave to amend their habeas petitions by adding new <u>Brady</u> and ineffective assistance of

counsel claims.[11]  Specifically, petitioners seek to add claims asserting that their counsel was constitutionally deficient for failing to request/obtain from the government additional <u>Brady</u> material - that is, evidence that might have been used to impeach John Ferguson, one of the government's cooperating witnesses in petitioners' trial.  The government objects, saying petitioners' motions are untimely, insofar as they were not filed within the one year limitations period imposed by § 2255.

Several appellate courts have addressed this issue, concluding that, notwithstanding the one year limitations period imposed by the Antiterrorism and Effective Death Penalty Act, a timely petition filed under § 2255 may be amended under the terms of Rule 15 of the Federal Rules of Civil Procedure.  <u>See, e.g.</u>, <u>United States v. Hicks</u>, 283 F.3d 380 (D.C. Cir. 2002); <u>United States v. Espinoza-Saenz</u>, 235 F.3d 501 (10th Cir. 2000); <u>Davenport v. United States</u>, 217 F.3d 1341 (11th Cir. 2000), <u>cert. denied</u>, 532 U.S. 907 (2001).  Consequently, despite the fact that petitioners' motions to amend were filed outside the applicable

---

[11]    As before, the court will also assume that petitioner Patrick McGonagle has properly joined in the motions advanced by the other petitioners.

40

one year limitations period, they may still be allowed if petitioners can show that they are permitted by Rule 15. Under that rule, an amendment "relates back" to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c).

The Court of Appeals for the District of Columbia Circuit recently considered the circumstances under which Rule 15 might properly be applied to a habeas petition, holding:

> Although Rule 15(c) could be read to mean that the relevant "occurrence" is the claimant's trial and sentencing, this interpretation has been resisted, and with good reason. In most cases, a prisoner's claims for collateral relief will arise out of the same criminal conviction; therefore, if the defendant's trial and sentencing are construed to be the "occurrence," virtually any purported amendment will relate back. Such a result would be difficult to square with Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions.
>
> Therefore, like our sister circuits, we agree that Rule 15(c) does not apply where the prisoner's proposed amendment makes claims or is based on occurrences totally separate and distinct, in both time and type from those raised in his original motion.

41

Hicks, 283 F.3d at 388 (citations and internal quotation marks omitted).  See also Pruitt v. United States, 274 F.3d 1315, 1318 (11th Cir. 2001) (holding that Rule 15 does apply to petitions filed under § 2255, but concluding that "while Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment."); Davenport, 217 F.3d at 1344 (adopting rule articulated in other circuits, which provides that "under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings.  Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type.") (citations and internal quotation marks omitted).

In this case, the claim petitioners seek to add by amendment is entirely novel and unrelated to any claims advanced in their original petitions.  That claim, as noted above, is based on counsels' alleged failure to obtain (and the government's alleged

42

failure to provide) <u>Brady</u> materials that would have assisted them in further impeaching the credibility of Ferguson. The only claim even remotely similar to that and advanced in their original petitions relates to the government's alleged failure to disclose the terms of its "deal" with John Burke. While both claims are based upon alleged <u>Brady</u> violations and ineffective assistance of counsel, those similarities are insufficient to permit petitioners to avail themselves of the protections afforded by Rule 15. <u>See, e.g.</u>, <u>United States v. Craycraft</u>, 167 F.3d 451 (8th Cir. 1999) (holding that untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely claim of ineffective assistance of counsel for not pursuing a downward departure); <u>United States v. Duffus</u>, 174 F.3d 333 (3rd Cir. 1999) (holding that untimely claim of ineffective assistance for counsel's failure to move to suppress certain evidence did not relate back to timely ineffective assistance of counsel claim based on counsel's failure to pursue insufficiency of evidence claim). Consequently, petitioners' motions to amend the original petitions are necessarily denied as untimely.

Parenthetically, the court notes that even if the motions to amend were not untimely, petitioners would still not be entitled to habeas relief on the ground asserted.  The government's case against petitioners was strong, defense counsel vigorously challenged Ferguson's credibility, effectively exposing likely motives to lie, and the jury was well aware that Ferguson was a "sullied witness," and certainly no "choirboy."  Mastracchio v. Vose, 274 F.3d 590, 604 (1st Cir. 2001).  Moreover, the additional impeachment value of the alleged Brady materials referenced in petitioners' motions to amend is relatively minor, given the extent to which Ferguson was throughly cross-examined and impeached by defense counsel.  See generally Stephens v. Hall, 294 F.3d 210, 218 (1st Cir. 2002) ("In weighing the prejudicial effect of counsel's errors, we must consider the totality of the evidence before the . . . jury.  A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.") (citations and internal quotation marks omitted); Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001) ("Three factors need to be considered in this case in order to make the [Strickland] prejudice determination.  The first is

the strength of the government's case against [defendant]. Second, we must evaluate the effectiveness of the presentation of [defendant's] defense absent the impeachment documents. Third, we must consider the potential impeachment value of the two documents in undermining the credibility of the government witnesses."). Consequently, even if petitioners were entitled to amend their original habeas petitions, they could not carry their burden with regard to the "prejudice" prong of the <u>Strickland</u> test.

## Conclusion

For the foregoing reasons, the court holds that the files and records of the case conclusively show that petitioners are not entitled to habeas corpus relief on any of the grounds advanced. Accordingly, the following petitions for habeas relief and ancillary motions are denied:

    Patrick McGonagle, Civil No. 02-73-M:
        Petition for Habeas Corpus (document no. 1)

45

Anthony Shea, Civil No. 02-73-M:
    Petition for Habeas Corpus (document no. 6)
    Motion for Appointment of Counsel (document no. 16)
    Motion to Amend Habeas Petition (document no. 17)
    Motion for Rule 6 Discovery (document no. 21)
    Motion for Rule 6 Discovery (document no. 24)

Matthew McDonald, Civil No. 02-84-M:
    Petition for Habeas Corpus (document no. 1)
    Motion for Appointment of Counsel (document no. 7)
    Motion to Amend Habeas Petition (document no. 14)
    Motion for Rule 6 Discovery (document no. 17)
    Motion for Reconstruction Hearing (document no. 23)
    Motion to Extend Time for Discovery (document no. 25)
    Motion for Rulings on Pending Motions (document no. 28)

Michael O'Halloran, Civil No. 02-88-M:
    Petition for Habeas Corpus (document no. 1)
    Motion for Appointment of Counsel (document no. 8)
    Motion to Amend Habeas Petition (document no. 16)
    Motion for Reconstruction Hearing (document no. 21)
    Motion for Rule 6 Discovery (document no. 23)

Stephen Burke, Civil No. 02-90-M:
    Petition for Habeas Corpus (document no. 1)
    Motion for Appointment of Counsel (document no. 6)
    Motion to Amend Habeas Petition (document no. 14)
    Motion for Reconstruction Hearing (document no. 17)

The Clerk of Court shall enter judgment in each of the above-referenced cases in accordance with the terms of this order and close the cases.

46

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 23, 2002

cc:  Patrick J. McGonagle
     Anthony Shea
     Matthew McDonald
     Michael O'Halloran
     Stephen Burke
     Peter E. Papps, Esq.

47