Figueroa v. SSA                    CV-11-100-PB        6/7/12

                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW HAMPSHIRE

Reyna Figueroa

     v.                                    Civil No. 11-cv-100-PB
                                           Opinion No. 2012 DNH 101
Michael J. Astrue, Commissioner,
Social Security Administration


                        MEMORANDUM AND ORDER

     Reyna Figueroa seeks judicial review of a decision by the

Commissioner of the Social Security Administration denying her

application for disability insurance benefits.  Figueroa alleges

that the decision finding her not disabled is unsupported by

substantial evidence, and specifically, that the Administrative

Law Judge ("ALJ") in her case improperly discounted the opinion

of her treating physician and accorded insufficient weight to

her subjective complaints.  For the reasons provided below, I

deny Figueroa's motion to reverse the Commissioner's decision.


                        I.   BACKGROUND[1]

     Figueroa applied for disability insurance benefits on

January 21, 2009, when she was twenty-eight years old.  She

_____

[1] Except where otherwise noted, the background information is
drawn from the parties' Joint Statement of Material Facts (Doc.
No. 13).  See LR 9.1(b).  I cite to the administrative record
with the notation "Tr."

alleged a disability onset date of November 1, 2008, due to rheumatoid arthritis. She attended school through eighth grade and did not start high school. Tr. 39. In the past she worked as a housekeeper, a packer, and an assembly worker.

## A.    Administrative Proceedings

Figueroa's application was denied initially and on reconsideration. She requested a hearing, and on October 4, 2010, she appeared and testified at a hearing before an ALJ. In a decision dated October 18, 2010, the ALJ denied her application and informed her that the Decision Review Board ("DRB") had selected her claim for review. By notice dated January 19, 2011, the DRB informed Figueroa that it was affirming the ALJ's decision.

## B.    Medical History

Medical records detailing Figueroa's rheumatoid arthritis date back to July 2006, when she visited the Southern New Hampshire Medical Center in Nashua for unrelated chest pain. Her treatment provider noted that she had a past history of rheumatoid arthritis, and x-rays showed scattered arthritic changes in her hands and left foot. An examination at that time revealed that she was alert and oriented, well nourished, well developed, and in no acute distress. She had no joint swelling

2

in her extremities.

Starting in January 2008, Figueroa sought treatment from Dr. John Gorman, a rheumatologist. On multiple occasions prior to Figueroa's alleged disability onset date, Dr. Gorman reported that Figueroa's rheumatoid arthritis was doing well with medication.

At Figueroa's initial visit with Dr. Gorman, examinations showed no joint swelling or tenderness. On June 2, 2008, Dr. Gorman reported that Figueroa's joints moved freely without pain and that her grip formation and her grip strength were well preserved. Her shoulder ached at times but not severely enough to warrant a corticosteroid injection.

In July 2008, Figueroa informed Dr. Gorman that her rheumatoid arthritis was causing moderate tenderness in her left shoulder, and she received an injection of Lidocaine. In September 2008, she received another Lidocaine injection for moderate tenderness in her right shoulder also caused by the rheumatoid arthritis. Dr. Gorman stated in October 2008 that Figueroa had mild tenderness in her shoulders and wrists.

On January 19, 2009, Figueroa complained to Dr. Gorman of worsening pain in her shoulders, wrists, hands, knees, ankles, and feet. Her shoulders exhibited some tenderness on

3

examination, but she was able to move them fairly well.

On March 13, 2009, Dr. Gorman reported that Figueroa's arthritis had not changed. He stated that she had particularly bad days about twice a week, and that her worst joints were her shoulders, wrists, hands, ankles, and feet. She continued to have tenderness in her shoulders, wrists, hands, knees, ankles, and feet. She was restarted on Methotrexate.

In May 2009, Dr. Gorman noted that Figueroa's arthritis had improved, and he instructed her to continue taking Methotrexate and Enbrel. In August 2009, he reported that Figueroa's arthritis had become a little more active. She had more pain in her shoulders and her hands and left ankle bothered her at times. Examination revealed moderate shoulder tenderness with stiffness, a mildly tender left ankle, and mild squeeze tenderness of her hands. Her rheumatoid arthritis was fairly stable but was still active at a low grade. Dr. Gorman injected both of her shoulders with Lidocaine.

On December 21, 2009, Dr. Gorman stated that Figueroa had significant aching and stiffness in her ankles and feet, and that her arthritis waxed and waned and tended to be worse in the colder months. An examination revealed tenderness and low-grade swelling in both her ankles.

4

Radiological testing performed in December 2009 showed that Figueroa had scattered arthritic changes in her hands and her left foot, which may have been due to rheumatoid arthritis.

Figueroa was treated at the emergency department of Southern New Hampshire Medical Center on June 23, 2010. She was prescribed Ibuprofen and Vicodin for arthritic pain in her right shoulder.

C.   **Medical Opinions**

On September 24, 2010, Dr. Gorman completed a Residual Functional Capacity ("RFC") questionnaire. He diagnosed Figueroa with rheumatoid arthritis and fibromyalgia, and opined that she often experienced pain severe enough to interfere with her attention and concentration. He further opined that she experienced depression and anxiety, and was incapable of a low-stress job. With respect to her physical capabilities, he stated that in an eight-hour workday, Figueroa could rarely lift and carry less than ten pounds; could never lift and carry ten pounds or more; could sit for about two hours; and could rarely twist, stoop, crouch, climb ladders, or climb stairs. In a competitive work situation, she could walk for twenty minutes at a time; sit for thirty minutes at a time; and stand for forty-five minutes at a time.

5

In addition to Dr. Gorman, two other doctors provided opinions on Figueroa's capabilities. Dr. Jonathan Jaffe, a non-examining state agency physician, completed a physical RFC assessment of Figueroa on April 13, 2009, based upon a review of the record evidence. Dr. Jaffe opined that she could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and push/pull without additional limitation. He further opined that she had no postural, manipulative, visual, communicative, or environmental limitations.

Dr. Dennis Becotte saw Figueroa for a consultative psychological exam on May 19, 2009. Figueroa was alert and oriented with a broad range of affect and no evidence of formal thought disorder. Her intellectual functioning was in the low-average range. Dr. Becotte noted that Figueroa's daily activities included taking care of her children, cleaning, and cooking. He diagnosed her with rheumatoid arthritis and adjustment disorder with a depressed mood. Dr. Becotte noted that Figueroa took medication for her arthritis, but was not presently taking any psychotropic medication. He opined that her mental status would not prevent her from maintaining

6

attendance and schedules; making simple decisions; interacting appropriately with coworkers and supervisors; and tolerating stressors common to work-like situations.

D. **Hearing Testimony**

At the administrative hearing, Figueroa testified that she experienced difficulty doing repetitive work, particularly work involving repetitive arm movements. She reported difficulties with her fingers, shoulders, knees, wrists, and feet, and testified that pain in her shoulders rendered her unable to lift objects and that pain in her fingers affected her ability to grip and grasp items. She stated that, on a typical day, she took her children to school, cooked, picked up her children from school, and then rested. She testified that she experienced four bad days a week regarding her pain. On those days, it was difficult for her to clean the house because of the pain in her hands. She said she needed both hands to lift a gallon of milk. She reclined to rest about two hours a day.

Following Figueroa's testimony, a vocational expert ("VE") testified. The ALJ asked the VE whether a person who could lift twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; had unlimited use of her hands to

7

operate controls as well as push and pull; and had no other limitations, could perform Figueroa's prior work. The VE answered in the affirmative. The VE also testified that such a person could also work as a laundry worker or addresser.

**E.    ALJ's Decision**

The ALJ evaluated Figueroa's claim in accordance with the five-step sequential evaluation process for evaluating disability claims. He found that she had not engaged in substantial gainful activity since November 1, 2008, her alleged onset date. The ALJ next determined that her rheumatoid arthritis constituted a severe impairment, but that the impairment did not meet or equal a listed impairment. He concluded that she had the RFC to perform a full range of light work and that she could perform her past relevant work as a housekeeper, packer, and assembly worker. Accordingly, he determined that Figueroa was not disabled and denied her claim. Figueroa now challenges the ALJ's determination in this court.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the

"final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

The findings of fact made by the ALJ are accorded deference so long as they are supported by substantial evidence.  Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion."  Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record.  Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

9

The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## III. ANALYSIS

Figueroa challenges the ALJ's decision on two grounds. She contends that he failed to properly weigh the opinion of her treating physician and that he erred in finding her subjective complaints not credible.[2] I address each argument in turn.

### A. ALJ's Treatment of Dr. Gorman's Opinion

An ALJ must take into account the medical opinions in a claimant's case record when making a disability determination.

---

[2] Figueroa's brief also contains a separate section in which she contends that the ALJ's RFC assessment is not based on substantial evidence in the record. This claim is based entirely on her other arguments, however, and so I do not address it separately.

20 C.F.R. § 404.1527(b). More weight should generally be accorded to the opinions of medical sources who have examined the claimant, and more weight should generally be accorded to treating sources than non-treating sources. 20 C.F.R. § 404.1527(c)(1)-(2). The rationale for giving more weight to treating sources is that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

When the opinion of a treating physician is well supported and not inconsistent with other record evidence, it must be given controlling weight. Id.; Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996) [hereinafter SSR 96-2p]. In all other instances, a number of factors apply to determine how much weight should be given to an opinion. 20 C.F.R. § 404.1527(c)(2). The factors to be considered include: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the record evidence supporting the opinion; the consistency of the opinion with other record evidence; and

11

whether the source is a specialist.  Id.

An ALJ must always provide "good reasons" in his decision for the weight accorded to a treating source's opinion.  Id. When an ALJ's decision is not favorable to the claimant, the decision must contain reasons for discounting the treating source's opinion that are "sufficiently specific to make clear to any subsequent reviewers" both "the weight the adjudicator gave" to the opinion and "the reasons for that weight."  SSR 96-2p.

In assigning only limited weight to the opinion of Dr. Gorman, Figueroa's treating physician, the ALJ explained that the functional limitations stated in Dr. Gorman's opinion were inconsistent with his own clinical observations, inconsistent with his notations that Figueroa was doing well -- particularly when she was on her medication, and inconsistent with the medical opinion of the state agency physician.  Figueroa presses two arguments for why the ALJ's analysis was inadequate.  First, she claims that the ALJ could not have relied on Dr. Gorman's statements that she was doing well, because a patient might be doing well in the context of her infirmity yet still be disabled.  Second, she asserts that the ALJ failed to sufficiently discuss the factors for evaluating a treating

12

source opinion that are set out in 20 C.F.R. § 404.1527(c). Neither argument is persuasive.

On her first argument, I agree that in certain cases it may constitute error to justify a denial of benefits by reference to a physician's statement that a patient is doing well. Depending on the context of the statement, a physician may be implying no more than that a patient with a severe and debilitating condition has not suffered additional deterioration. Courts have overturned decisions where remarks akin to the remarks in this case have been taken out of context. See, e.g., Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) (doctor's notation that claimant's condition was "stable" did not support an inference that he was capable of work); Gude v. Sullivan, 956 F.2d 791, 794 (8th Cir. 1992) (error for ALJ to rely on treating physician's note that claimant was "doing well" in context of her systemic lupus erythematosus as support for discounting his opinion); Mounce v. Astrue, No. 10-cv-560-PB, 2011 WL 5282638, at *9 (D.N.H. Nov. 2, 2011) (error for ALJ to lift phrase "spectacularly well" from physician's notes without considering context of remarks).

I am satisfied, however, that the ALJ in this case did not take Dr. Gorman's notations out of context. The instances where

Dr. Gorman stated that Figueroa was doing well are all accompanied by further description noting her generally mild symptoms at the time. For example, in Dr. Gorman's notes of January 15, 2008, he indicated that Figueroa's arthritis was "doing quite well," and went on to describe her joints as in generally good condition, with only her shoulders exhibiting mild symptoms. Tr. 195. Similarly, in his notes of June 2, 2008, he stated that Figueroa's arthritis was "doing well," and elaborated that her joints moved freely and without pain, that there was no warmth, swelling, or tenderness in her joints, and that her grip formation and grip strength were well preserved. Tr. 193. Although her shoulders ached at times, he determined that her symptoms were "not severe enough lately for a corticosteroid injection." Id. And in his notes from October 2, 2008, Dr. Gorman again expressed his positive outlook on Figueroa's condition by stating that her arthritis was generally doing "very well," and that a recent worsening of her symptoms had likely occurred only because she had been off of her medication for two weeks. Tr. 190. In light of the content of Dr. Gorman's notes, I conclude that the ALJ did not take Dr. Gorman's remarks out of context. Dr. Gorman's statements provide support for the ALJ's position that the doctor's opinion

14

was undermined by his own clinical notes, and I perceive no error in the ALJ's use of Dr. Gorman's statements.

On Figueroa's claim that the ALJ failed to properly explain his reasons for discounting Dr. Gorman's opinion, I determine that the ALJ's discussion of his reasons, although limited, is adequate. Figueroa points out that the ALJ did not explicitly take account of all of the factors articulated in 20 C.F.R. § 404.1527(c), for example, the length of Dr. Gorman's treatment relationship with Figueroa or the import of Dr. Gorman's specialization in rheumatology. Although more detail would have been preferable, the ALJ's decision is nonetheless "sufficiently specific to make clear to [] subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ relied on the agency physician's opposing opinion in conjunction with the portions of Dr. Gorman's notes -- including his statements about Figueroa's condition and his clinical observations of her often mild symptoms -- that undermine his opinion and support the agency physician's opposing position. I am able to discern the rationale the ALJ used to reach his determination and that determination is founded on "good reasons" that are supported by substantial record evidence. See 20 C.F.R. § 404.1527(c)(2);

15

SSR 96-2p.  I therefore decline to reverse the ALJ's decision on the basis of the weight he gave to Dr. Gorman's opinion.

**B.    Credibility of Subjective Complaints**

Figueroa argues that the ALJ erred in finding that her subjective reports of pain and functional limitations were not credible.  "Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered[.]" SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  A two-step analysis governs an ALJ's evaluation of symptoms such as pain.  SSR 96-7p, 1996 WL 374186, at *2.  First, the ALJ considers whether the claimant is suffering from "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." Id.  If the claimant meets that threshold, the ALJ moves to the second step:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain

16

or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Id.

At step one, the ALJ in this case found that Figueroa's medically determinable symptoms could reasonably be expected to cause her alleged symptoms. At step two, however, the ALJ found that her "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." Tr. at 28. Figueroa asserts that the ALJ failed to fully acknowledge a number of factors that supported her credibility and weighed in favor of a finding of disability. I disagree.

Figueroa's argument is essentially a recitation of those facts that weigh in her favor. She points to her limited activities of daily living, arguing that although she was not totally incapacitated and could engage in "low grade" activities like occasional cooking and cleaning, none of the activities suggest the ability to perform substantial gainful activity. She notes that she complained of particularly bad days where her symptoms were severe and that certain factors exacerbated her

17

symptoms.  She draws attention to her prescription for Enbrel, medication used for treating rheumatoid arthritis.  She also argues that Dr. Gorman's opinion supports her subjective complaints.

Even though many of these facts may be probative of whether Figueroa's subjective complaints are credible, it is not my task to make a credibility finding in the first instance.  See Ward, 211 F.3d at 655 (setting out scope of judicial review).  My review is limited to deciding whether the ALJ's credibility determination is based on substantial evidence, and Figueroa has failed to show any error in the ALJ's decision.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (ALJ's credibility determinations are "entitled to deference, especially when supported by specific findings," and will be upheld when "their adequacy is supported by substantial evidence").  Far from ignoring the evidence cited by Figueroa, the ALJ's opinion clearly shows that he considered most of the facts listed by Figueroa: he discussed in some detail her activities of daily living, he went through portions of the record that show she suffered periods of increased and decreased pain, and he offered explanations for his weighing of the medical opinion evidence.  In finding the evidence now

18

emphasized by Figueroa unpersuasive, the ALJ cited to record evidence contradicting her subjective complaints, most significantly the various portions of the medical treatment notes indicating that her symptoms were typically fairly mild when she was taking her medication. Even if the record in this case could arguably justify an alternative finding on Figueroa's credibility, and ultimately on her RFC and disability status, the ALJ's determinations are supported by substantial record evidence, and must be affirmed. Id.

## IV. CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 11) and deny Figueroa's motion to reverse (Doc. No. 8). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 7, 2012

cc:  Raymond J. Kelly, Esq.
     Gretchen Leah Witt, Esq.

19